**Raul Luna HERNANDEZ, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 04–81–00147–CR.**

Court of Appeals of Texas,
San Antonio.

July 21, 1982.

R. Emmett Harris, Uvalde, for appellant.

Earle Caddel, Dist. Atty., Uvalde, for appellee.

Before CADENA, C. J., and CANTU, BASKIN, JJ.

OPINION

CANTU, Justice.

Appellant was convicted by a jury of the offense of murder after a plea of not guilty; the punishment was assessed by the jury at seventy-five (75) years' confinement.

Appellant brings forth one ground of error on appeal. He complains that the trial court erred by admitting evidence of oral statements made by him to third parties, which evidence had been in the possession and knowledge of the district attorney prior

to trial and was not disclosed nor produced by the district attorney, in violation of the court's pre-trial discovery order.

Pursuant to and under the authority of Tex.Code Crim.Pro.Ann. art. 39.14 (Vernon 1979), appellant filed a motion for discovery and inspection of evidence.[1]  The appellant moved the court to order the district attorney to produce and permit inspection of certain designated items, including

all oral, written and recorded statements or memoranda of same made by the defendant to any investigating officer or to any member of any law enforcement agency or to any third party and in the possession of or within the knowledge of the District Attorney's Office or any agent thereof, including any law enforcement agency.

On June 4, 1979, the trial court granted the motion as to these items.

The case went to trial on April 30, 1980. During the second day of trial, the State sought to introduce testimony of two witnesses, John Redmond, Jr. and Billy Martin, concerning oral statements[2] allegedly made by appellant to each of them while they were incarcerated in the Uvalde County Jail with the appellant.

Appellant objected to the admission of any statements, because the district attorney had not complied with the pre-trial discovery order and had failed to inform appellant of the existence of either of these witnesses or their testimony regarding the oral statements of the appellant.  The district attorney admitted that he had known of Redmond's testimony approximately one month before trial and that he learned of Martin's testimony the day before trial started.

John Redmond testified that he was incarcerated with appellant for approximately two months and that during that time he had a conversation with appellant.  The crux of his testimony was as follows:

Q. What did he tell you about his case?

A. Basically that he was instructed by his counselor not to tell anybody anything about his case.  I said, "Well, don't tell me," but he would go ahead and tell me.

Q. What did he tell you?

A. Let's see.  Well, he said that when he started to shoot the dude in the van that he said, "No, Rudy, don't," but he shot him anyway.  I had been shot twice through the right lung so I guess I know how it feels.  My wound filled up with blood and I couldn't breathe.  He said that he was yelling and he pushed the body over and it made a gurgling sound.

Q. Who pushed the body over?

A. Rudy did.

Q. Did he tell you who he shot?

A. Let me see.  I don't know his name. It was a young dude.  He said that I reminded him of him because he was athletic or something like that.

Q. Did he describe what kind of vehicle the dude was in?

A. It was a van.  That's what he said.

Q. Did he tell you how many times he shot him?

A. No, he didn't say how many times.

Q. Did he tell you what with?

A. He said that he bought a rifle or something or a twenty-two.

Q. Did he ever tell you what happened to the rifle?

A. He said that where he put it no one would ever find it.

Appellant's counsel cross-examined Mr. Redmond extensively.

Billy Martin testified as follows,

Q. Do you know the defendant here in court?

---

1. Under Article 39.14 appellant was entitled to inspect and copy any *written* statement made by him in the possession, custody or control of the State or any of its agencies.

2. We are not concerned with the type of oral statements addressed by Article 38.22 § 3(a) obtained as a result of custodial interrogation. *See,* however, Article 38.22 § 5 providing for admissibility of voluntary statements and statements otherwise admissible.

Q. A. Yes, sir, I do.

Q. How long have you known him?

A. About four months.

Q. Where did you get to know him?

A. In the Uvalde Jail.

Q. Have you ever had any conversations with him?

A. Yes, sir, I have.

Q. Have you ever had any conversation with him about his case?

A. Yes, sir, on a couple of occasions.

Q. Would you tell us what he told you about his case?

A. Well, he never really talked too much about it. He was telling me what the State had against him. He was telling me about the case that they had and the eyewitness against him.

Q. They had a what?

A. They had an eyewitness against him as to the shooting incident. He said that there is no way that the guy could have seen the shooting. He said that what happened was that there was no lights there.

Q. Did he say anything to you about a weapon or a gun?

A. He said that there was no weapon to be used against him. On one occasion he said it was throwed in the pond.

Q. He said it was thrown in the pond?

A. Yes, sir.

Q. He didn't say, "I threw it in the pond"?

A. No, sir.

Q. He said it was thrown in the pond?

A. Yes, sir.

This witness was also extensively cross-examined by appellant's counsel.

The appellant was informed on the first day of trial that the State was going to call these two witnesses. However, it was not until the second day of trial, May 1, 1980, that he was informed that these witnesses would be called to testify that the appellant made incriminating statements to each of them while in jail in Uvalde County. Appellant objected that the suppression of this information was in violation of the court's discovery order and constituted an unfairness of sufficient magnitude so as to deny him due process of law. He further asserted that he was wholly denied the opportunity to anticipate or prepare a defense against this evidence or to make any attempt to investigate the identity, reputation or character of the two witnesses. The court overruled the objection and appellant moved for a mistrial. No continuance was requested.

■ Evidence willfully withheld from disclosure under a discovery order should be excluded from evidence. *Hollowell v. State*, 571 S.W.2d 179 (Tex.Cr.App.1978). *See also Bates v. State*, 587 S.W.2d 121 (Tex.Cr.App.1979) and *Neal v. State*, 626 S.W.2d 879 (Tex.App.—San Antonio 1981, rev. ref'd). However, the prosecution's failure to comply with a discovery order may constitute harmless error. *Hollowell v. State, supra; Neal v. State, supra.*

■ The order granting the motion for discovery placed a specific duty on the prosecutor in this case to ascertain what evidence was within the terms of the granted motion and to make such evidence available to the defense under the terms of the order.[3] We nevertheless find no reversible error.

The statements made by appellant to these two witnesses constituted only one strand in a web of incriminating evidence adduced at trial. Furthermore, appellant has not affirmatively shown how he was injured. He extensively cross-examined these two witnesses in an attempt to impeach them. He has failed to show that

---

**3.** Although Article 39.14 does not encompass the extent of discovery granted by the trial court's order, the State was placed under a duty to comply with the order until or unless rescinded and appellant was justified in expecting full compliance. However, we are not persuaded that appellant was unaware of the statements he had made to these witnesses and upon being informed that they would be witnesses for the State should have been aware of their purpose as State witnesses.

he would have conducted his defense any differently had there been notice to him of the expected testimony of the two witnesses and the effect, if any, of any such change in his defense. If more time had been needed to conduct an investigation into these two witnesses' history or character, appellant should have requested a continuance. This he did not do.

Although we are not condoning the State's violation of the court's pre-trial discovery order, we find that no harm to the appellant's case has been demonstrated. See Neal v. State, supra.

Judgment is affirmed.