George Thomas WALTERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–82–0332–CR.

Court of Appeals of Texas,
Amarillo.

Oct. 31, 1984.

Seldon B. Hale, Amarillo, for appellant.

David Hamilton, Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

COUNTISS, Justice.

Appellant was convicted of aggravated rape, Tex.Penal Code Ann. § 21.03(a)(2) (1974)[1] and, under an enhanced indictment, was sentenced to life imprisonment. He attacks his conviction by two grounds of error, contending the trial court erred (1) in failing to suppress evidence obtained from a search of his home and vehicle and (2) in admitting hypnotically enhanced testimony by his victim. We affirm.

The State presented evidence that appellant kidnapped nine-year-old M.H. on the evening of March 5, 1982, from a stalled vehicle in Amarillo, raped her and committed deviate sexual offenses on her in his vehicle and in his residence, and released her near her home the next morning. M.H. was able to provide the police with a description of her attacker, his vehicle and his residence, but was unable to locate the residence. However, on March 10, 1982, an anonymous tipster, whose information was relayed to Police Officer James Smith by a private detective, implicated appellant. Thereafter, Officer Smith drove by appellant's residence and after observing that it fit the description given by M.H., took her there. She identified it as the residence where she was taken and assaulted by appellant.

That same day, Police Officers Hudson and Webb were told appellant was a suspect in the case and were sent to his residence to "spot up" on it and to attempt to locate appellant. Hudson observed the residence for a short period of time, then attempted to raise appellant. After no one responded to his knocks, Officer Hudson enlisted the aid of one of the neighbors, who also knocked and called for appellant.

---

1. *Repealed by* 1983 Tex.Gen.Laws, ch. 977, § 12 at 5321. *See now* Tex.Penal Code Ann. §§ 22.- 011, 22.021 (Vernon Supp.1984).

When there was no response, Hudson spoke to appellant's mother and sister, who expressed concern that appellant might be in the residence but too ill to respond. After those conversations, Hudson testified that a neighbor volunteered to enter the house "and check for Mr. Walters and his welfare." The neighbor then entered the house through a back window and returned in a few minutes without locating appellant. The officers, said Hudson, then allowed the neighbor to remove the lock from the garage door and look inside the garage for appellant. He was also not in the garage. The officers did not enter the house or garage and no items were taken from either place at that time, although they did observe appellant's vehicle inside the garage.

The next morning, at 1:14 a.m., Officer Smith obtained a search warrant for the vehicle and the house. As a result of the search several items of evidence used in the trial were obtained. Appellant, by his first ground, challenges, on the authority of the Fourth Amendment to the United States Constitution,[2] the trial court's failure to suppress that evidence, arguing that the initial warrantless entry of the house, conducted under the supervision of Officer Hudson, so poisoned the tree that the later entry under a search warrant produced only poisoned fruit. Appellant also argues that the warrant was invalid because an informer was used and the test required by *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) was not satisfied. Neither argument will withstand an analysis of the record.

■ We will assume, in resolving the first ground, that the initial entry, at the behest of Officer Hudson, was improper. Although there is some authority for a warrantless entry to rescue someone in danger, *Corbett v. State*, 493 S.W.2d 940, 946–47 (Tex.Crim.App.1973), *cert. denied*, 414 U.S. 1131, 94 S.Ct. 871, 38 L.Ed.2d 756 (1974), the events described in this record

fall far short of the kind of emergency that will permit a police officer to ignore the Fourth Amendment and enter private property without warrant or invitation. Nor can the policeman shield himself behind the private citizen who actually made the entry if, as here, that citizen is acting for the police as an agent of the State. *Spring v. State*, 626 S.W.2d 37, 41 (Tex.Crim.App. 1981).

■ That error does not, however, mandate suppression of evidence discovered under an otherwise valid search warrant, if there is probable cause for the warrant from an independent source. *Segura v. United States*, — U.S. —, 104 S.Ct. 3380, 3386, 82 L.Ed.2d 599, 609 (1984); *United States v. Agapito*, 620 F.2d 324, 338 (2nd Cir.), *cert. denied*, 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980). In this case, the testimony, and the affidavit attached to the warrant, establish numerous totally independent bases for the warrant. For example, the victim, whose reliability need not be recited, *Cummings v. State*, 651 S.W.2d 14, 15 (Tex.App.—Amarillo 1983, no pet.), identified the house in question as the site of her detention and described events in it and in the vehicle, as detailed in her testimony and in the warrant affidavit, that would indicate the presence of critical evidence in both locations. Certainly her information did not come from the initial warrantless entry. Likewise, as detailed in the affidavit and the statement of facts, at least one person who was not involved in the warrantless entry, told the police he had sold a vehicle to appellant that fit the description given by M.H. That person also displayed to the police a bill of sale that contained appellant's name and address and the vehicle license plate number. Thus, there was ample untainted support for issuance of the search warrant and we cannot suppress the evidence it produced.

Appellant argues that the State's case began to come together only after Officers

---

**2.** Appellant relys only on federal constitutional grounds and we will limit our resolution of the issue to those grounds.

Webb and Hudson saw the vehicle inside the garage when they permitted their citizen-agent to remove the lock and enter the garage. As indicated by the evidence detailed above, that argument is not factually correct and the reference in the affidavit to Officer Webb's observation of the vehicle in the garage is insignificant. *United States v. Agapito, supra.*

Appellant also argues that the evidence must be suppressed because the warrant is based on a tip from an informant who does not satisfy the *Aguilar* test. An examination of the affidavit supporting the warrant, however, fails to reveal any reference to an informant. Instead, information from persons and sources claimed to be reliable is detailed.

 It is true that an unknown informant told a private detective, who told Officer Smith, that appellant was the man the police wanted. It is also true that, because of the tip, Officer Smith drove by appellant's residence, observed that it fit the description given by M.H., took M.H. by the residence and relied on her identification of it in getting the warrant. We find nothing in that sequence of events, however, that triggers the *Aguilar* test. The police can investigate on the basis of a tip from any source, reliable or unreliable, so long as they do not violate the law. If that tip leads the victim of a crime to the scene of the crime, it is her identification of the scene, not the tip, that is the basis for any warrant that may be issued. Ground of error one is overruled.

By his second ground, appellant contends that M.H. should not have been permitted to identify him before the jury because she was hypnotized by the police. Ancillary to that argument, appellant says personnel of the Rape Crisis-Domestic Violence Center and the prosecutor coached M.H. extensively before she testified, thus compounding the problem.

 The record reveals that police detective Gerald Entrop hypnotized M.H. on March 8, 1982. Appellant was not a suspect in the case at that time and his name

was not mentioned nor was his photo used. While under hypnosis, M.H. described her attacker and a police artist, also present, sketched the person described by M.H. We note, however, that there is no evidence in this record that appellant was given any information or suggestions, before, during or after the hypnosis session, that would have any effect on her description or identification of appellant. The police hypnotist denied, in fact, that anything suggestive occurred.

In *Vester v. State*, No. 07–81–0206–CR (Tex.App.—Amarillo, Aug. 5, 1983, pet. granted) (not yet reported) this Court rejected mechanistic approaches and emotional overreactions to the problem of hypnotically enhanced testimony, preferring instead to evaluate such testimony just as all other evidence is evaluated: Is it reliable? Specifically, we held:

> [P]ost-hypnotic identification testimony is admissible where the totality of the circumstances surrounding the hypnotic session shows that the session was not so impermissibly suggestive as to give rise to a substantial likelihood of ... misidentification.

In this case, we do not even reach the problem present in *Vester*, because there is no evidence connecting M.H.'s testimony and the events that occurred while she was hypnotized. There is nothing to indicate that the hypnosis affected her testimony, directly or indirectly; certainly the police hypnotist could not influence her identification of appellant when he did not know his identity. Thus, there is no evidence of a substantial likelihood of misidentification because of the hypnosis.

The same evaluation applies to appellant's complaint about the activities of the Rape Crisis personnel and the prosecutor. Absent some evidentiary connection between those activities and the testimony of M.H., and absent evidence that those activities caused M.H. to give false or misleading testimony, no error is shown. *Aguero v. State*, 476 S.W.2d 672, 673 (Tex.Crim.App. 1972). Ground of error two is overruled.

The judgment is affirmed.