Herbert Kay KING, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–87–00064–CR.

Court of Appeals of Texas,
Dallas.

Feb. 9, 1988.

**516**

Daniel J. Smith, Dallas, for appellant.

Anne B. Wetherholt, Dallas, for appellee.

Before HOWELL, ROWE, and LAGARDE, JJ.

ROWE, Justice.

Herbert Kay King appeals from a conviction of murder for which the jury assessed punishment at confinement for life in the Texas Department of Corrections and a fine of $10,000. In his original brief appellant asserts four evidentiary points of error. These points concern violation of discovery orders, warrantless searches, a double search, and warrants supported by defective affidavits. In a supplemental brief, appellant asserts fundamental error in the court's charge respecting instructions on parole. For reasons given below, we overrule all points of error and affirm the trial court's judgment.

A detailed review of the evidence is not required since no sufficiency points have been asserted. Suffice it to say that in a two-week trial involving well over 150 exhibits, the evidence presented supports the jury verdict that appellant committed a brutal murder involving suffocation and the use of incendiary devices. The evidence further supports a conclusion that appellant planned the attack and thereafter showed little remorse.

Appellant's first ground of error asserts that the trial court erred by admitting into evidence State's Exhibit No. 134 over the objection of the appellant that the item had not been presented to appellant's counsel in violation of the court's discovery order. The exhibit objected to was a suicide/confession note written by appellant to his wife. The note did not admit to the murder itself but contained language admitting theft and contemplating murder. The trial court made a pretrial order granting broad discovery to the appellant. The order in paragraph six allowed appellant to inspect all evidence seized under warrants at appellant's residence or place of business. The note does not fall within paragraph six since the note was not seized under a warrant but was discovered by a third party and subsequently delivered to federal agents.

■ Paragraph eight of the discovery order required the prosecution to allow inspection of all tangible evidence expected

to be admitted at trial. Although the note was entered by the State during rebuttal testimony, the record is clear that the State at all times intended to enter this evidence at trial. Therefore, the discovery order was clearly violated. However, mere violation of discovery orders does not mandate reversal. *Keegan v. State,* 681 S.W.2d 806, 810 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd).

■■■ A defendant in a criminal case does not have a general right to discovery of evidence in the State's possession. *Quinones v. State,* 592 S.W.2d 933, 940 (Tex. Crim.App.) (en banc), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). Appellant's right to discovery is limited to exculpatory or mitigating evidence. *Dickens v. Court of Appeals for the Second Supreme Judicial District of Texas,* 727 S.W.2d 542, 551 (Tex.Crim.App.1987). Beyond this, discovery is left to the discretion of the trial court under article 39.14, TEX. CODE CRIM.PROC.ANN. (Vernon 1979). *Mosely v. State,* 627 S.W.2d 770, 774 (Tex. App.—Houston [1st Dist.] 1981, no pet.). The note in question was not exculpatory or mitigating, and thus appellant had no right to its discovery. However, the trial court acted within its discretion in granting the broad discovery order.

■■■ Evidence willfully withheld from disclosure under a discovery order should be excluded from evidence. *Hollowell v. State,* 571 S.W.2d 179, 180 (Tex.Crim.App. 1978). However, when the evidence is admitted, the standard for review is whether the trial court abused its discretion. *See Hightower v. State,* 629 S.W.2d 920, 925 (Tex.Crim.App.1981). In reviewing the trial court's discretion, bad faith on the part of the State and the reasonable anticipations of the defendant are considered. *Id.* The evidence in the present case shows probable bad faith on the part of the State in withholding the evidence. However, other items found along with the note were made available to the appellant; and, there-

fore, it is reasonable to conclude that appellant had knowledge that the note was also found. Appellant is imputed with the knowledge of where he stored things. The fact that appellant did not inform his counsel of what he put in a box known to be in the custody of law enforcement officers is not relevant. Considering appellant's reasonable expectation, we cannot say that the trial court abused its discretion in allowing the note to be entered into evidence.

Furthermore, if bad faith on the part of the State is alone sufficient to establish abuse of discretion, the error nonetheless may be harmless. *Hernandez v. State,* 636 S.W.2d 611, 613 (Tex.App.—San Antonio 1982, no pet.). To be harmful, the evidence withheld in violation of the trial court's order must be such as would have affected the outcome of the trial in his favor. *Macias v. State,* 704 S.W.2d 484, 488 (Tex.App.—Houston [14th Dist.] 1986, no pet.).

> The elements which would establish a potential effect on the trial outcome are: (1) suppression of evidence after a request by the defense; (2) the evidence was favorable to the defense; (3) the evidence was material. *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); *Ransonette v. State,* 550 S.W.2d 36 (Tex.Crim.App.1976).

*Id.* The note suppressed by the State was neither material[1] nor favorable to appellant's defense. After reviewing the entire record, we find that the admission of the note into evidence, without its first being made available to appellant for inspection, did not have the effect of depriving appellant of an opportunity to raise a doubt, not otherwise existing, as to his guilt. *See Whitchurch v. State,* 650 S.W.2d 422, 425 (Tex.Crim.App.1983) (en banc). For these reasons, we overrule appellant's first point of error.

Appellant's second point of error asserts that the trial court erred in denying appellant's motion to suppress evidence seized

---

1. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality.'" *Quinones v. State,* 592 S.W.2d 933, 941 (Tex.Crim. App.1980), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980).

without a search warrant in violation of Texas Code of Criminal Procedure Annotated, article 38.23 (Vernon 1979), and in violation of both state and federal Constitutions. The record reflects that the evidence complained of, a portion of which was the subject of appellant's first point of error, was discovered by appellant's father-in-law who was cleaning out a trailer owned by appellant, under the instructions of appellant's wife, and while the trailer was located on the father-in-law's property. A second piece of evidence, a flare similar to that used during the crime, was discovered by the father-in-law while helping to move a boat and trailer on appellant's property. On both occasions, the father-in-law turned the evidence over to the federal investigators.

■ It is axiomatic that constitutional and statutory protections against warrantless searches only apply to searches conducted under governmental authority. *Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410, 417 (1980); *Kohler v. State*, 713 S.W.2d 141, 143 (Tex.App.—Corpus Christi 1986, no pet.). The government cannot shield itself, however, behind a private citizen who is acting as an agent of the State. *Walters v. State*, 680 S.W.2d 60, 62 (Tex.App.—Amarillo 1984, no pet.). Thus the question in this case is whether the father-in-law was acting as an agent for the State when he discovered the evidence admitted at trial. The United States Fifth Circuit Court of Appeals in *United States v. Bazan*, 807 F.2d 1200 (5th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987), established a framework for making the agency determination. The court held:

> [W]here the government has offered no form of compensation to an informant, did not initiate the idea that he would conduct a search, and lacked specific knowledge that the informant intended a search, the informant does not act as a government agent when he enters another's property.

*Id.*, at 1204. Similarly, appellant's father-in-law was not compensated by the government, the government did not compel the search, and the search was conducted without the government's knowledge. We therefore hold that appellant's father-in-law was not an agent of the State when he discovered evidence later admitted at trial. The mere fact that a private citizen conducts a warrantless search and then, in sympathy for law enforcement, turns evidence over to the State does not make that person an agent of the State. Appellant's second point of error is overruled.

■ Next, appellant asserts that the trial court erred by admitting into evidence items that were illegally obtained as a result of a second search on the same property. Appellant contends that the Federal Alcohol, Tobacco and Firearms agents' search of appellant's business address for a second time violated article 18.01(d), TEX. CODE CRIM.PROC.ANN. (Vernon 1977). That provision forbids the issuance of subsequent search warrants pursuant to Subdivision (10) of article 18.02 of the Code for the purpose of searching the same person, place, or thing subjected to a prior search under the same subdivision.

Appellant's contention is quickly disposed of when it is recognized that federal officials conducted both searches under federal warrants. The Federal Rules of Criminal Procedure do not contain a similar provision forbidding subsequent searches. *See* FED.CRIM.PROC. 41 (West Supp. 1987). The federally authorized searches were not governed by Texas law. Therefore, the federal agents conducting the search did not violate article 18.01(d) of the Texas Code of Criminal Procedure.

■ A potential problem does arise when evidence so obtained by federal agents is later introduced into evidence in a state court proceeding. We have found no cases in Texas dealing with this issue but find federal authority to be helpful. The court in *Park v. El Paso Board of Realtors*, 764 F.2d 1053 (5th Cir.1985), held that, where evidence was obtained by federal officers in violation of a local telephone tariff, the evidence was admissible in federal court at the discretion of the trial court since the State interest in deterring covert taping of telephone conversations did not

outweigh the benefit of providing the fact finder with all relevant testimony. *Id.*, at 1066. *Park* recognizes the distinction between federal and state search rules and the notion that a valid search occurs when federal officers comply with federal rules although the search may violate state rules. In addition, the United States Supreme Court in *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), held that the judicially created exclusionary rule should not be used to exclude evidence, lawfully seized in one sovereign jurisdiction, from admission in a proceeding in a different sovereign jurisdiction. *Id.*, 428 U.S. at 459–60, 96 S.Ct. at 3034–35, 49 L.Ed.2d at 1064. This decision was founded on the notion that the exclusionary rule was established to deter illegal searches, but when the search is lawfully conducted, no deterrence is gained by excluding the evidence in another sovereign's jurisdiction. *Id.*

In this case the federal searches made pursuant to federal warrants were lawful when conducted, and the evidence seized would have been readily admissible in federal courts. This Court concludes that no deterrent effect is gained by excluding from a state court proceeding evidence rightly seized under federal law. Since we hold that the evidence lawfully seized under the second federal warrant was admissible in the state court, we overrule appellant's third point of error.

■ The searches conducted under federal warrants by federal agents must still meet constitutional protection against unreasonable search and seizure. Appellant in his fourth point of error contends that the trial court erred by overruling appellant's suppression motion regarding evidence seized in violation of appellant's constitutional rights. Specifically, appellant contends that the search warrants issued were invalid because they were based on defective affidavits. Appellant relies on the two-prong test set out in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). However, that test was abandoned in favor of a totality-of-circumstances test in *Illinois v. Gates*, 462

U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983).

The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Jones v. United States*, [362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697, 708 (1960)].

*Id.*

The affidavits provided to the U.S. Magistrate forming the basis for the search warrants in this case constitute a substantial basis on which the magistrate could have determined that probable cause existed. The affidavits outlined the investigation conducted by law enforcement officers and included hearsay testimony from a confidential informant. The informant reported conversations directly with appellant concerning dealings with the deceased. Further, the informant reported on appellant's expertise with firearms and explosives, past incidences of observing appellant with such items, and recent attempts by appellant to buy explosives from the informant. The informant knew appellant's home and business addresses as well as his personal telephone number, all of which were verified by law enforcement officers. The informant also identified appellant's vehicles, which were verified as belonging to appellant. Furthermore, one of the vehicles was seen by an independent witness in the vicinity of the victim's home during a period of two weeks prior to the crime. Finally, the informant reported that he had personally observed the appellant store explosives at his warehouse. Taken as a whole, the law enforcement officer's affidavit reporting the testimony of an informant formed a substantial basis for the magistrate's conclusion in this case that probable cause existed to search appel-

lant's home and warehouse. The information provided by the informant was credible because it was detailed, extensive, and partially verifiable. We therefore overrule appellant's fourth point of error.

■ Over a month after this appeal had been submitted and without leave of court, appellant filed a supplemental brief containing a fifth point of error, asserting for the first time fundamental error in the court's charge to the jury with respect to instructions on parole. Appellant's fifth point is based upon the holding in *Rose v. State,* 723 S.W.2d 345 (Tex.Crim.App.1987). As indicated in *Rose,* since no objection was made in the trial court, appellant now has the burden of demonstrating egregious harm in order to obtain from this court the relief he seeks. *See Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1985) (opinion on rehearing). Appellant's supplemental brief, however, contains no details concerning egregious harm. Thus, even though we have accommodated appellant by considering his belated brief, his fifth point of error must be overruled for lack of support. *See Sanchez v. State,* 722 S.W.2d 781, 784–785 (Tex.App.—Dallas 1986, pet. ref'd).

The judgment of the trial court is affirmed.

LAGARDE, J, concurred and filed an opinion.

HOWELL, J., dissented and filed an opinion.

LAGARDE, Justice, concurring.

I wholly concur in the result reached by Justice Rowe; however, I must disagree with that portion of the opinion which concludes that "[t]he evidence in the present case shows probable bad faith on the part of the State in withholding the evidence." In my judgment, the record in this case does not support such a conclusion. To the contrary, the record reflects an implied finding of good faith by the trial court, sufficiently supported by the record; consequently, I am unwilling to disturb that finding on appeal. *See Dunn v. State,* 721

S.W.2d 325, 336 (Tex.Crim.App.1986) (*Jackson v. Denno* hearing).

It is true that the trial court's granting, on November 24, 1986, of paragraph eight of the discovery motion, required, by the express language thereof, that the State allow inspection of all tangible evidence expected to be admitted at trial. It is further true that State's Exhibit Number 134, an undated note, re-assembled from folded and torn pieces of paper which were found in State's Exhibit No. 1, the blue box opened by King's father-in-law, was not disclosed to the defense until it was offered into evidence by the State on rebuttal during the course of the trial.

At the time of the offer, however, in response to objections raised by the defense, the trial court called upon the State to explain its failure to have previously disclosed the exhibit. The lead prosecutor, and the prosecutor shown by the record to have actively participated in the pre-trial hearing at which paragraph eight of the discovery motion was granted, informed the court that he had understood the defense motion to require disclosure of tangible evidence the State would offer in its case in chief. He further informed the trial court that in a conversation that he had had with the defense counsel, ten days before trial, that the defense counsel had specifically told him that he, the defense counsel, was only interested in items that the State intended to offer in its case in chief. Although present when this statement was made to the court, the defense counsel did not dispute the prosecutor's account of their conversation, nor did he challenge the prosecutor's good faith.

Assuming, without deciding, that rule 11 of the Texas Rules of Civil Procedure applies and precludes enforcement of such an agreement, as the dissent suggests, I find this to be irrelevant as to whether or not such an agreement can be considered by the court on the issue of good faith. In this record, there is no dispute as to the prosecutor's account of his conversation with the defense counsel. It stands uncontroverted. In this uncontroverted statement, I find support for the trial court's

implied finding of good faith. In my judgment, this support is not undercut, as the dissent suggests, by the later argument of a second prosecutor, who, in response to the argument of defense counsel that State's Exhibit No. 134 was a suicide note, not a murder note, explained to the jury the State's tactical decision to hold the note for rebuttal. Invited by the defense's argument that the State really didn't believe it was a murder note or it would have introduced it in its case in chief, the prosecutor simply explained the State's tactical decision to offer the exhibit on rebuttal. It should be remembered that this argument was made by the State who understood the court's order to be limited to its case in chief. The trial court's admission of State's Exhibit No. 134 implicitly credits the State's explanation, and further implicitly finds that the State acted in good faith. I find no inconsistency here so as to conclude that the State acted in probable bad faith.

The lead prosecutor informed the court that he understood the defense motion to go only to tangible items the State intended to offer in its case in chief. Because defense counsel limited his request of the State to items it intended to offer in its case in chief, it is reasonable to conclude that this re-inforced the prosecutor's understanding that the scope of the motion, which had been prepared by defense counsel, was limited to the State's case in chief. By this qualification or limitation, the defense allowed the State the opportunity to withhold State's Exhibit 134 until rebuttal, and to do so, in my judgment, in good faith. Had defense counsel not so limited or qualified his request at the time the State sought to carry out the court's order, as the prosecutor understood it to be, this understanding would no doubt have been clarified at that time. Had the court adhered to its broad discovery order, State's Exhibit No. 134 would no doubt have been turned over to the defense and perhaps the State's tactical decision would have been different. However, that did not occur. Consequently, I do not find support in the argument of the prosecutor for a finding of probable bad faith on the part of the State.

There is nothing in this record to reflect that, had the lead prosecutor not understood the motion to be limited to the State's case in chief, and had defense counsel not qualified or limited his request, thereby re-inforcing the prosecutor's understanding that the trial court's order was so limited, State's Exhibit No. 134 would have been withheld from earlier disclosure to the defense, or that it would have been, as a tactical decision, withheld until rebuttal.

For the foregoing reasons, I decline to join Justice Rowe in concluding that the State acted in "probable bad faith" in failing to disclose State's Exhibit No. 134. Because the record, in my judgment, sufficiently supports the trial court's implied finding of good faith by the State, I conclude that the trial court acted within its discretion in admitting State's Exhibit No. 134 into evidence.

Finding no reversible error, I would affirm.

HOWELL, Justice, dissenting.

I dissent. Justice must not stoop to conquer. The State violated the court's discovery order; the violation was deliberate and wilful; the withholding cannot be dismissed as, beyond a reasonable doubt, harmless; reversal must ensue.

The note or letter in question was apparently written by appellant to his wife at a time when he was under investigation, fearful of imminent exposure, and on the verge of a suicide attempt that never came about. The admissions made therein deeply implicated him in the crime charged in the indictment. The majority is correct in stating that the suppressed item was not exculpatory in nature and that the grant or denial *of a discovery order* was therefore within the trial court's discretion. However, the fact that discovery of non-exculpatory written evidence to be offered by the State was discretionary to the court is academic. *The court granted a discovery order.* The order having been granted and the trial having commenced with appellant and his counsel reasonably entitled to rely on the assumption that the order had been

complied with and that all written evidence to be used by the State had been exhibited, the court lost all discretion (as that term relates to the application of the law to the facts of the particular case) to modify the order or admit evidence that violated the order.

This does not mean that a trial court may not seasonably modify its order. The State may, during trial, move for leave to amend a discovery order. The court may grant the amendment, but it would be an abuse of discretion to do so if a defensive theory already placed before the jury were to be refuted. The power of a trial court to modify a discovery order has no application to the case at hand because the State made no request to modify and because the State employed the instrument in question as rebuttal evidence. Unless it served to refute a defensive theory, it was not proper at all as rebuttal evidence. *See, e.g., Laws v. State,* 549 S.W.2d 738, 741 (Tex.Crim. App.1977).

Concerning discovery orders against the State, the majority is also correct in stating that the courts have also created a good-faith exception. When the State offers evidence that violates a discovery order, the court may find that the terms of the order were misunderstood or that something was overlooked or that the existence of certain evidence was not previously discovered or that the State did not anticipate the need for certain evidence until sometime during the trial. *See, e.g. Honea v. State,* 585 S.W.2d 681, 687 (Tex.Crim.App.1979). Just as the trial court is the fact finder on motions and other incidental matters, it is the fact finder on claims that the State has acted in good faith in response to discovery orders. Its fact findings on such incidental matters will not be disturbed on appeal if they are reasonably supported by the evidence. *Cf. Dunn v. State,* 721 S.W.2d 325, 336 (Tex.Crim.App.1986) *(Jackson v. Denno* hearing). In this context, a declaration on appeal that the trial court has committed no abuse of discretion amounts to no more than a holding that the court's fact finding, express or implied, is reasonably supported by the evidence. Any notion that a trial court may, on personal predilec-tion or at whim, permit violation of discovery orders must be rejected. *See Lindley v. State,* 635 S.W.2d 541, 543 (Tex.Crim. App.1982) (" [W]here the trial court grants a motion for discovery and the prosecution fails to disclose that evidence ordered disclosed by the trial court, then that evidence should not be admitted, if it is offered into evidence by the State during the trial.")

As the majority concedes, there was no room in this record for the trial court to find good faith, hence no room for the trial court to exercise its "discretion" in favor of permitting the State to place the offending exhibit in evidence contrary to the discover order. This was amply demonstrated by the State's closing argument.

> [Y]ou don't tell them everything you've got up front. You kinda save a little bit and ... [that's] just smart. That's just good trial tactics. That's just good prosecution. We didn't make it up folks, but ... [you're] darn right, we didn't bring it to you up front because you want to see what they have got to say. And that just blows their defense out of the water.

In closing statement, the State of Texas further argued:

> He's manipulated everyone in this case. It is obvious he has manipulated his lawyers. They almost fell out their chair when they saw that note.

Previously, the State had taken an entirely different position when appellant's objection to the exhibit was being argued outside the presence of the jury. Counsel for the State there contended that defense counsel "told me specifically ten days ago ... [that] he was only interested in items that we intend to offer in the case in chief." Civil rule 11 is applicable to any such contentions; they must be disregarded. Tex.R.Civ.P. 11 (agreements between attorneys unenforceable unless evidenced in the record). The underlying premise is that trial of the merits should not be occluded by trial of disputes between counsel as to what was said and done. In addition, the law must be interpreted so as to suppress the obvious temptation to fabricate. If a defendant decides to waive rights un-

der a discovery order which is a part of the record and if the State desires to rely on such waiver, it must cause the waiver to be placed on record. *Cf.* Tex.R.Civ.P. 11, *supra.*

Searching for grounds to uphold the trial court, the majority has held that appellant should have anticipated that the exhibit would be offered on the theory that appellant knew that the box in which the item had been seized and searched by federal authorities. The holding is strained in view of the testimony of a federal agent that the exhibit, as he found it, had been torn in pieces and that he had reconstructed the pieces. Even further, if it be granted that the appellant had reason to suspect that some governmental agency had come into possession of the document, was the appellant not entitled to conclude that the instrument had been discarded or that the State had decided, for reasons unknown, not to offer it? In short, was appellant not entitled to rely on the court's order? Even more pointedly, was he required to distrust the State of Texas when it represented by implication that it had complied with the order? Was he required to anticipate that the State might be engaging in artifice—stooping to conquer? Framed in this light, the answer is obvious.

Implicitly conceding the weakness of its grounds for holding that the trial court committed no error, the majority has held the error to be harmless. In doing so, it has seized upon a grounds that the State has not had the temerity to advance in its own brief. Instead, it has declared to this court that the exhibit was offered on rebuttal to refute "the defensive theory that the offense was actually committed by appellant's friend and business associate...." The "no harm" declaration is particularly hard to accept in view of the fact that the exhibit was the only documentary evidence that the jury requested to see during its deliberations.

The majority has further mislaid the burden on the question of harm. The court duly heard the appellant's motion and entered its order; the State failed to comply. It was the burden of the State, not the appellant to show why it failed to comply or to present any other matters in mitigation.

Of course, even though the majority has not taken express notice thereof, the proper test is harmless *beyond a reasonable doubt.* Tex.R.App.P. 81(b)(2) (error in trial court requires reversal on appeal, unless appellate court determines beyond a reasonable doubt that error made no contribution to the conviction or punishment). Clearly, the State has not demonstrated that its highly questionable tactics were, beyond a reasonable doubt, harmless. The mere fact that this ploy was resorted to testifies to the opposite. When counsel deliberately withheld the exhibit from discovery so that he would have ammunition to surprise his opposition on rebuttal, he was thinking in anything but the terms of harmlessness; harm to the theory of defense advanced by the opposition was the very objective of this intentional withholding.

This dissent ends whence it began. Justice must not stoop to conquer. The law west of the Pecos, frontier justice, if it ever existed, passed with the frontier. Our constitutional system of criminal justice contemplates a fundamentally fair trial, regardless of the heinousness of the offense. No matter how generous the discovery order may have been, it was the law as declared for the particular case. Appellant was entitled to rely on the law as it had been laid down by the trial court.

I dissent from the majority holding in this case. On account of the lawless act of the State itself, this defendant must be tried anew.