Joseph Francis KEEGAN, Jr.,
Appellant,

v.

The STATE of Texas, Appellee.

David SANTIAGO, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–83–530CR, C14–83–531–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 18, 1984.

Bobbi L. Blackwell, Mark Atkinson, Houston, for appellant.

Calvin Hartmann, Asst. Dist. Atty., Houston, for appellee.

Before PAUL PRESSLER, ROBERTSON and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is a consolidated appeal from two judgments of conviction for the offense of murder. In a joint trial, the jury found

appellants, Joseph Francis Keegan, Jr., and David Santiago, guilty and assessed punishment for appellants at nineteen years confinement in the Texas Department of Corrections and a $5,000 fine. Appellant Keegan raises six grounds of error and appellant Santiago raises three grounds of error. We affirm both judgments.

Appellants' first three grounds of error are identical. Their first ground of error alleges that the trial court erred in allowing the prosecutor to introduce testimony concerning fingerprint identification of the deceased because the prosecutor violated the trial court's pre-trial discovery order requiring the prosecutor to provide any such evidence to appellants' attorneys at least ten days prior to trial. In a second ground of error, appellants assert that the trial court erred in allowing the prosecutor to introduce bullets recovered from the body of the deceased, again in violation of the trial court's pre-trial discovery order. As their third and last common ground of error, appellants assert that the trial court committed reversible error in admitting testimony concerning the bullets recovered from the body of the decedent since the prosecutor violated the trial court's pre-trial discovery order by not providing the appellants' attorneys with any such evidence at least ten days prior to trial. Appellant Keegan's fourth ground of error claims that the trial court erred in failing to allow appellant Keegan to cross-examine a State's witness in violation of appellant's Sixth Amendment right of confrontation. In his fifth ground of error, appellant Keegan argues that the trial court committed reversible error in limiting appellant's ability to show the violent character of the deceased since there was evidence before the jury of some act of aggression by the deceased. In appellant Keegan's last ground of error, he claims that the trial court erred in failing to grant appellant's request for an accomplice witness charge.

The State's first witness, William Kasbohm, testified that appellant Keegan told him that his .22 caliber pistol was stolen by a person named Glen and that he was going to get it back. Three or four days later, on the day of the killing, September 7, 1982, Keegan and Santiago picked up Kasbohm in the company truck and dropped him off at a business which Santiago was supposed to be guarding that night. Keegan told Kasbohm that Santiago and he were going to get the pistol back from Glen. The next day, Kasbohm testified, appellant Keegan told him that Santiago and he picked up Glen and took him along his work route. Appellant Keegan transported guard dogs for a kennel. When they arrived at the Black Brollier Cement Company, one of the kennel's clients, all three men got out of the truck. Keegan told Kasbohm that appellant Santiago walked behind Glen and hit him over the head with a pipe. Glen fell to the ground. Appellant Keegan then took the .22 caliber pistol from Glen and shot him twice in the head and once in the heart. Appellant Keegan told Kasbohm that the body was hidden in a culvert at the Black Brollier and the pistol was thrown into the Houston Ship Channel.

Wyndon Guy, part owner of the kennels which employed Keegan, testified that appellant Keegan told him that appellant Santiago, a security guard, and Keegan planned to take the man who they believed to have stolen Keegan's pistol on Keegan's work routes to "take care of him" at the Black Brollier. A week later Keegan told Guy that the gun theft had been taken care of and the evidence destroyed. Later Guy went to look for a lost dog at the Black Brollier Cement Company, and found a badly decomposed body in a culvert. Fearing what Keegan might do to him, Guy waited two weeks before reporting it to the police.

Another State's witness, James Widner, testified that he worked at the kennel in September, 1982, and was a partner with Keegan in the security dog business. Widner recalled seeing Keegan with a .22 caliber pistol and later Keegan told him that Glen had stolen the pistol. The day after the killing, Widner testified that Keegan came by his house and told him that Santiago and he had taken care of Glen. Keegan

told Widner that Santiago and he had convinced Glen to go along with them to the Black Brollier to investigate an alleged break in at that location. Upon arriving, Keegan and Santiago acted as if the burglary was still in progress. Santiago took a steel bar and Keegan took a shotgun from the truck. Keegan told Widner that all three men began to walk toward the Black Brollier building with Glen leading the way. Santiago struck Glen over the head with the steel bar. Keegan said that he went over to Glen, who lay on the ground, took the .22 caliber pistol from Glen, and shot him three times. After hearing Keegan's news, Widner told Keegan that he did not want to hear any more and walked with Keegan to the truck which was parked outside. Widner saw blood and two shovels in the bed of the truck. Widner testified that Keegan told him that they tried to bury Glen's body but the ground was too hard, so they put his body in the truck and drove to a culvert where they put the body. Keegan also told Widner that hollow point bullets were used. Widner also testified that after the killing he talked to Santiago and told him that Keegan told him about the killing. Santiago admitted to Widner that he hit Glen over the head with a steel bar and was present when Keegan shot him. He told Widner that the killing had been easy.

Testimony established that the body was so badly decomposed that it was unidentifiable. Two fingerprint examiners testified that the fingerprints of the deceased matched those of Glen Cavanaugh. A firearms examiner from the Houston Police Department testified that the three bullets removed from the deceased's body were .22 caliber and that at least one bullet was a hollow point.

Both appellants testified on their own behalf. Appellant Keegan, in his testimony, asserts that the killing of Cavanaugh was in self defense. Keegan stated that Cavanaugh wished to burglarize the Black Brollier. Cavanaugh pulled a pistol on Keegan. A struggle ensued and the pistol was knocked to the ground. As Cavanaugh reached for a shotgun in the truck

and came at him with it, Keegan shot him. Keegan stated that he later returned to the kennel and related the events of the shooting to Widner and Guy who told him to hide the body. Keegan testified that Guy and Widner returned with him to hide the body and dispose of the gun. Appellant Santiago testified that he was working at his assigned job as a security guard at the time of the murder and was not present at the Black Brollier Cement Company.

In both appellants' first three grounds of error, they complain that the trial court erred in allowing the admission into evidence of fingerprint identification testimony, ballistic testimony, and the actual slugs recovered from the deceased's body. They claim that the evidence is inadmissible because the prosecutor failed to comply with the trial court's pre-trial order to provide appellants' attorneys with such evidence at least ten days prior to trial.

When the three .22 caliber bullets removed from the decedent's body were introduced into evidence, appellants objected on the grounds that the slugs had not been "turned over" to appellants in accordance with the court order. The trial court stated that its order required the State to only inform appellants of the evidence in the State's possession and to allow appellants to examine it. The prosecutor informed the court that the bullets were listed in an autopsy report, a copy of which appellants had received, and that no tests had been performed on the bullets. The court denied a request to declare a mistrial so that the attorneys could prepare the case. The court offered a continuance, which was not accepted, to have appellants' expert examine the bullets and fingerprints.

Appellants objected to the admission of any evidence of fingerprints since the fingerprints were not made available to appellants prior to trial. The objection was overruled and Susan Fuller, a Houston Police Department fingerprint examiner, identified the fingerprints taken from the decedent as those of Glen Cavanaugh. Fuller's identification, as well as an identification

by a second Houston Police Department examiner, went without objection.

Appellants also objected to the testimony of C.E. Anderson, a Houston Police Department firearms examiner. Again, appellants based their objection on the fact that they had not been allowed to discover such evidence prior to trial. The objection was overruled and the witness identified the bullets, based on a visual inspection from the witness stand, as .22 caliber and he testified that the bullets had been fired.

■■■ The State must disclose all exculpatory evidence to the accused. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The trial court should allow discovery only if the evidence is "material to any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies." Tex.Code Crim.Proc. art. 39.14. Evidence willfully withheld from disclosure under a discovery order should be excluded from evidence. *Bates v. State,* 587 S.W.2d 121 (Tex.Crim.App.1979); *Hollowell v. State,* 571 S.W.2d 179 (Tex.Crim.App.1978). A prosecutor's failure to comply with a discovery order, however, may constitute harmless error. *Hollowell,* 571 S.W.2d 179; *Neal v. State,* 626 S.W.2d 879 (Tex. App.—San Antonio 1981, pet. ref'd). The standard to be applied in cases of suppression or nondisclosure of evidence by the State is whether the testimony may have had an effect on the outcome of the trial. *Saunders v. State,* 572 S.W.2d 944 (Tex. Crim.App.1978), citing *Smith v. State,* 516 S.W.2d 415 (Tex.Crim.App.1974); *Crutcher v. State,* 481 S.W.2d 113 (Tex.Crim.App. 1972). Error is committed only if after a review of the whole record the undisclosed evidence creates a reasonable doubt that did not otherwise exist. *Whitchurch v. State,* 650 S.W.2d 422 (Tex.Crim.App.1983). The elements which would establish a potential effect on the trial outcome are: (1) suppression of evidence after a request by the defense; (2) the evidence was favorable to the defense; (3) the evidence was material. *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); *Ransonette v.*

*State,* 550 S.W.2d 36 (Tex.Crim.App.1976). We find that appellants did not establish that the violation of the trial court's order affected the outcome of their trial. The evidence was not favorable or material to the defense. Appellants have never contested the identity of the decedent. Appellant Keegan testified that he shot the decedent several times with a .22 caliber pistol and that the body was put in a culvert, where it was later found. Appellant Keegan alleged self defense and appellant Santiago tried to establish an alibi, but Santiago's participation in the murder was proven through statements by both appellants to several witnesses. We have reviewed the entire record and find that the testimony concerning the .22 caliber bullets and the fingerprint identification of the deceased were not of such a nature that if it had been made available to appellants prior to trial it would have created a reasonable doubt that did not otherwise exist. Discovery and inspection of the fingerprints, of the bullets, and of the ballistics expert's testimony would not have affected their defenses or the outcome of the trial. We overrule grounds of error one, two, and three.

In appellant Keegan's fourth ground of error, he asserts that the trial court erred in not permitting him to cross-examine James Widner, a State's witness, violating his Sixth Amendment right of confrontation. When Widner was first questioned by the police he denied knowledge of the Cavanaugh murder case. Later Widner was charged and arrested upon complaint by James Kasbohm, with the offense of retaliation. While in jail on the retaliation charge Widner gave a written statement to police about both appellants' involvement in the Cavanaugh murder. He was later released from jail on what appellant Keegan claims is a "very low pre-trial bond." The State elicited testimony from Widner about the retaliation charges. The court, after a hearing outside the jury's presence, would not allow defense counsels to cross-examine Widner about the facts of the retaliation charge because the court determined that Widner would consistently invoke his

Fifth Amendment rights of self-incrimination.

■■■ The scope of cross-examination is within the control of the trial judge in the exercise of his sound discretion. *Saunders v. State,* 572 S.W.2d 944 (Tex.Crim.App. 1978); *Toler v. State,* 546 S.W.2d 290 (Tex. Crim.App.1977); *Richardson v. State,* 508 S.W.2d 380 (Tex.Crim.App.1974). In light of the fact that James Kasbohm, the complaining witness, testified as to the retaliation charge and the prosecutor testified to any arrangements the State made with Widner, in exchange for his testimony as a State's witness, we hold that the trial judge did not abuse his discretion.

■■■ In his fifth ground of error, appellant Keegan argues that the trial court erred in limiting appellant's ability to show the violent character of the decedent since there was evidence before the jury of some act of aggression by the deceased. The trial court did not allow testimony concerning specific acts of misconduct by the deceased. Appellant Keegan's attorney in a bill of exception showed that the witness Frank Wells, a friend of the deceased's since grade school, had known the deceased to steal and to burglarize, both done to support a drug habit. Wells testified, out of the jury's presence, that he knew of the deceased's criminal record. Wells recalled that the record involved all auto theft offenses. Wells stated that he knew that the deceased had engaged in violent conduct. However, the only instance of violent conduct recounted by Wells was a pistol whipping which Wells did not personally witness.

The defense may offer testimony as to any specific act of violence or misconduct which evidences the violent character of the deceased under the following conditions....

[I]f offered for the purpose of showing the deceased was in fact the aggressor (not that the defendant thought the deceased was making or about to make an attack) the witness must know but it need not be shown that appellant had knowledge of the acts of violence of the deceased at the time of the homicide.

Before any evidence of the deceased's character for violence becomes admissible, however, there must be evidence of some act of aggression by the deceased which the character tends to explain (such as drawing a gun or reaching for a pocket where one is usually carried). *Limon v. State,* 632 S.W.2d 812 (Tex.App. —Houston [14th Dist.] 1982, pet. ref'd), quoting *Dempsey v. State,* 159 Tex.Cr.R. 602, 266 S.W.2d 875 (1954). In the instant case, appellant Keegan testified that the decedent pulled a pistol on him and that after the pistol was knocked from his hand the decedent reached for a shotgun in appellant Keegan's truck. Evidence of the deceased's violent character would be admissible. However, Wells did not actually see the specific act. A witness may assert the existence of a fact if his knowledge of that fact was gained through personal observation and reasonable inferences from that observation. *Wilson v. State,* 605 S.W.2d 284 (Tex.Crim.App.1980). Wells' knowledge was not through personal observation. Rather, it was from the victim of the pistol whipping. Appellant's fifth ground of error is overruled.

■■■ Appellant Keegan in his sixth ground of error claims that the trial court committed reversible error in failing to grant appellant's request for an accomplice witness charge over appellant's timely objection. In *Day v. State,* 532 S.W.2d 302 (Tex.Crim.App.1975), the court held that if the evidence raises an issue and the charge is properly requested, the trial court must submit the issue to the jury. In our case, however, the evidence did not raise an accomplice issue. Appellant Keegan's attorney requested a charge on accomplice witnesses. Appellant's attorney was specifically concerned with appellant's testimony that Widner and Guy helped hide the decedent's body. Even if Keegan's testimony were true, we find a charge on accomplices would not be necessary. Although the 1974 Penal Code abolished the traditional distinction between accomplices and principals, it does specify that "a person is crimi-

nally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex.Penal Code Ann. § 7.01(a) (Vernon 1974). If Widner and Guy had helped appellant Keegan hide a body, they would not be considered a party to the offense of murder. Widner and Guy did not help plan or execute the murder. In fact these two witnesses were not at the scene during the murder. Appellant Keegan's last ground of error is overruled.

Accordingly, we affirm the judgments of the trial court.