COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

__________________________________________________________________


 NUMBER 13-99-619-CR


CHRISTOPHER LEE YOW , Appellant,


v.


THE STATE OF TEXAS , Appellee.

___________________________________________________________________


 NUMBER 13-99-620-CR


PHILLIP LAMAR YOW, Appellant,


v.


THE STATE OF TEXAS, Appellee.

__________________________________________________________________


On appeal from the 105th District Court

of Kleberg County, Texas.

__________________________________________________________________


O P I N I O N

Before Chief Justice Valdez and Justices Dorsey and Rodriguez

Opinion by Justice Rodriguez


Appellants, Christopher Lee Yow and Phillip Lamar Yow, (1) are appealing from a joint jury trial that resulted in their
convictions for the murder of Gumecindo DelaRosa, Jr. (2) A jury assessed punishment for each at eighty years confinement
in the Institutional Division of the Texas Department of Criminal Justice. By five points of error, appellants contend they
were denied a fair and impartial trial. By three additional points, Christopher complains of the supplemental jury charge
and ineffective assistance of counsel. We affirm.

By their first three points, appellants assert they were denied their constitutional right to a fair trial, with effective counsel,
because: (1) the State violated discovery orders by failing to produce requested physical evidence, specifically a shell
casing and a supplemental police report prepared by Sergeant Frank Garza; and (2) the trial court admitted, over objection,
photographs of the shell casing and testimony regarding that shell casing. Appellants contend the court abused its
discretion in admitting this evidence and in denying their motion for new trial.

The trial court granted appellants' pre-trial motions seeking discovery of, inter alia, physical evidence, weapons, shells,
cartridges, objects, tangible property, police reports and reports of scientific tests. In response to the discovery requests, the
State tendered, among other things, color photographs of the inside of the Yow vehicle, two of which showed a shell casing
on the floor of the suspect vehicle. The State's production did not, however, include the actual shell casing or the
supplemental police report that made mention of the shell casing. (3)

Immediately prior to trial, defense counsel visited the police station and inspected physical evidence, including a tire from
an El Camino, not the suspect vehicle, and metallic fragments. Counsel were assisted by Tamera Meyers Blackstock, a
detective with the City of Kingsville Police Department who investigated the crime scene and who later testified that
Sergeant Garza told her he had photographed the shell casing. (4) Counsel also spoke with Detective Mario Munoz who had
used a gun powder residue collection kit on the recovered shell casing. Counsel were not, however, shown the shell casing
that was apparently in a canister in the evidence room. The existence of the shell casing was not discussed with Detectives
Blackstock and Munoz.

On the third day of trial, Detective Blackstock provided the State with copies of the supplemental report that referenced the
shell casing. Detective Blackstock explained that because of routing problems, she had not been informed of the report
until the afternoon of September 9, 1999, the second day of trial. The State immediately provided a copy of the report to
appellants and the trial court.

Outside the presence of the jury, the court held a hearing on the supplemental report and the shell casing. At the hearing,
the State explained that color pictures of the shell casing had been made available to the defense in response to the
discovery request. Appellants' counsel acknowledged receipt of the photographs, but claimed that the photographs did not
put them on notice of the existence of the shell casing, and thus, did not cure the alleged error of nondisclosure. The
following dialogue occurred between the court and appellants' counsel after counsel objected to the introduction of the
photographs of the shell casing:

Christopher's Counsel: This is the photograph of, I suppose, what they say is a bullet casing, but without further testimony
you can't really tell what it is. The photograph is so poor.



* * * * *



The Court: . . . Can you point that out to me. . . ?

Christopher's Counsel: Yes, sir. I think this is what the State is talking about. This small object here. You can't really tell
from the photograph what it could be. It could be a bullet casing. It could be a small piece of metal, copper pipe, a pen
part. It could be anything.

The Court: Did you notice it before?

Christopher's Counsel: I saw it, but I didn't know what it was. I couldn't tell.

The Court: Did you ask?

Christopher's Counsel: Who was I going to ask?

The Court: The D.A. or the assistant D.A.

Christopher's Counsel: No, I couldn't ask him what it was because there was nothing in any of the reports about a bullet
casing being recovered.

* * * * *



The Court: Did you look at this photo here?

Phillip's Counsel: Yes, sir, we have no idea what that is.

The Court: Well, did you look at the items right up here that appear to be casings[?]

Phillip's Counsel: Your Honor, it appears to be anything.

The Court: All right. Did you look at those?

Phillip's Counsel: We did.

The Court: Did you ask the police department or the prosecutors, what are these little things back over here?

Phillip's Counsel: We asked them, what physical evidence do you have?

The Court: Did you ask them what this is?

Phillip's Counsel: No sir, we did not ask them specifically what that is. If that, in fact, was a bullet casing that they had
recovered, Detective Meyers would have or should have provided that to us at the time we were at the police department to
view the evidence.

* * * * *



The Court: Did you ask her whether she took pictures of any bullet casings?

Phillips's Counsel: Well, apparently, she took the pictures.

The Court: Did you ask her?

Phillip's Counsel: We did not ask her.

Christopher's Counsel: Because we didn't know.

Phillip's Counsel: That's right.

The Court: Did you ask what these things were?

Christopher's Counsel: We didn't know what they were.

Phillip's Counsel: But we did not ask.

* * * * *



Christopher's Counsel: I didn't ask her because she presented the physical evidence to us, and we assumed that that was all
there was.

Appellants' objections were overruled. The court then asked appellants how much time they would need to conduct any
additional investigation to be fully prepared to continue with the trial. Appellants replied that they would be ready to
proceed with the trial the following morning.

At trial, the photographs of the shell casing were offered through the following testimony of Detective Blackstock:

 


 Sergeant, let me show you State's Exhibit Number 8 and State's Exhibit Number 9, and ask you if you recognize those
photographs?


 


 
 Yes, sir.
 


 

 


 What are they?


 


 
 These are photographs that Sergeant Garza had taken of the vehicle. When - - After searching it, they found one
of the shells.

 


* * * * *

 


 Okay. On the right-hand side of State's Exhibit 8, what do you see?


 


 
 That's the passenger seat.
 


 

 


 The front seat?


 


 
 Yes, sir.

 


 

* * * * *


 


 And over to the side?


 


 
 That's the running [board].
 


 

 


 All right. And in between, what is depicted right in between?


 


 
 The - - It's the seat belt holder.


 


 

 


 That's where the seat belt comes out?




 


 
 Yes, sir.


 


 

 


 And behind the seat belt holder, what is clearly visible?




 


 
 The shell casing.


 


 

 


 What kind of shell casing is clearly visible there?




 


 
 It was a .22.


 


 

 * * * * *



 


 State's Exhibit Number 9 depicts a similar view, does it not.




 


 
 Yes, it does.


 


 

* * * * *



 


 And behind the housing for the seat belt, what is clearly visible here?




 A: The casing.



 


 And was this casing recovered?




 


 
 Yes, sir, it was.


 


 

* * * * *
 


 The question is based on a hypothetical. If a person is sitting at a window on the passenger side of the car with the
door closed and is leaning out the window with a rifle, a .22 caliber rifle, and shoots a couple of times with the rifle, at
the time a casing is ejected - -




 


 
 Is ejected.


 


 

 


 - - right? Would State's Exhibits 8 and 9 be consistent with where a casing would land?




 


 
 In my opinion, yes.


 


 

 The threshold issue is whether the trial court erred by admitting the photographs of the shell casing and testimony
regarding that shell casing, when the State failed to produce the actual shell casing and the supplemental report containing
information about the casing until the third day of trial. We review the trial court's decision to admit or exclude evidence
under an abuse of discretion standard. Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). We look to see
whether the court acted without reference to any guiding rules or principles. Lyles v. State, 850 S.W.2d 497, 502 (Tex.
Crim. App. 1993). Furthermore, we recognize that when a trial court grants a motion for discovery, and the prosecution
fails to disclose evidence ordered disclosed, the evidence should not be admitted if it is offered into evidence by the State
during the trial. Lindley v. State, 635 S.W.2d 541, 543 (Tex. Crim. App. 1982); see Tex. Code Crim. Proc. Ann. art. 39.14
(Vernon Supp. 2001) (allows for discovery of information in criminal case pursuant to court order). However, under the
facts of this case, Lindley does not apply. 

 The color photographs of the shell casing were provided to appellants prior to trial as part of discovery. The testimony of
Detective Blackstock established that the photographs, taken of the suspect vehicle, clearly revealed a shell casing on the
floor of the vehicle. (5) From our review of the record, we conclude that the trial court did not abuse its discretion in
admitting the photographs and allowing testimony about the photographs and shell casing.

 Nonetheless, appellants argue that because the actual shell casing had not been produced, they were going to rely on the
defensive theory that there was no physical evidence connecting appellants to the crime. They claim this theory was
completely gutted by the trial court's alleged error in admitting the photographs and related testimony. Appellants urge that
the subsequent admission of such evidence prevented appellants' trial counsel from being effective, and deprived appellants
of constitutional rights to a fair trial pursuant to the Sixth and Fourteenth Amendments of the United States Constitution
and article 1, sections 10 and 19 of the Texas Constitution.

 A criminal defendant's constitutional right to discovery of evidence in the State's possession is limited to exculpatory or
mitigating evidence. See King v. State, 746 S.W.2d 515, 517 (Tex. App.-Dallas 1988, pet. ref'd). Otherwise, a defendant
does not have a general right to discovery of the State's evidence. See Washington v. State, 856 S.W.2d 184, 187 (Tex.
Crim. App. 1993); Quinones v. State, 592 S.W.2d 933, 940 (Tex. Crim. App. 1980). Article 39.14 of the Texas Code of
Criminal Procedure does, however, provide that, upon motion by the defendant showing good cause, the trial court may
order the State to produce certain "evidence material to any matter involved in the action" which is within the State's
possession, custody or control. Tex. Code Crim. Proc. Ann. art. 39.14 (Vernon Supp. 2001). Any evidence willfully
withheld from disclosure under a discovery order should be excluded from evidence upon the defendant's timely objection. 
See Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000) (citing Hollowell v. State, 571 S.W.2d 179, 180 (Tex.
Crim. App. [Panel Op.] 1978)).

 We have already concluded the court did not abuse its discretion in admitting the photographs of the shell casing and the
testimony regarding the casing. Also, the shell casing and the supplemental report were not admitted into evidence and no
testimony was offered regarding the report. Further, to the extent appellants argue that the undisclosed evidence should
have been produced because it was exculpatory or mitigating, we conclude they waived such argument when the court
allowed them a continuance so that their own experts could examine the shell casing and they declined. (6) United States v.
Bagley, 473 U.S. 667, 677 (1985) (undisclosed evidence is material only if it is reasonably probable that the outcome of
trial would have been different had evidence been disclosed); Brady v. Maryland, 373 U.S. 83, 87 (1963) (prosecutors must
disclose material evidence favorable to accused); McBride v. State, 838 S.W.2d 248, 251 (Tex. Crim. App. 1992) ("a
criminal defendant has a right to inspect evidence indispensable to the State's case because that evidence is necessarily
material to the defense of the accused"). See Keegan v. State, 681 S.W.2d 806, 809-10 (Tex. App.-Houston [14th Dist.]
1984, pet. ref'd) (trial court did not err in admitting fingerprint identification testimony, ballistic testimony, and actual slugs
recovered from deceased's body even though prosecutor failed to comply with pretrial order because trial court offered
defendant a continuance to have expert examine bullets and fingerprints). Moreover, prior discovery of the actual shell
casing and report would not have provided appellants with a means to exonerate themselves or to impeach the prosecution's
witnesses. To the contrary, based on the record before this Court, the shell casing and the supplemental report were
inculpatory in nature.

 We are aware of no criminal case holding that disclosed photographs of an actual object and testimony regarding those
photographs should be excluded as a sanction against the State for its nondisclosure of the actual object and a police report
regarding that object when the latter evidence was not admitted at trial. Furthermore, we find nothing in the record that
shows the complained of evidence was willfully withheld. Accordingly, we cannot conclude that the trial court erred in
admitting the disclosed photographs of the shell casing and allowing the testimony about which appellants complain.

 Appellants also complain the trial court erred in denying their motion for new trial because of the admission of this
evidence. The court of criminal appeals has consistently held "the decision on a motion for new trial rests within the sound
discretion of the trial court, and in the absence of an abuse of discretion this Court would not be justified in reversing the
judgment." State v. Gonzalez, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993) (citations omitted); see Salazar v. State, 38
S.W.3d 141, 148 (Tex. Crim. App. 2001). We cannot conclude that the trial court erred in denying appellants' motion for
new trial. Appellants' points of error one, two and three are overruled.

 By point of error four, appellants contend the trial court denied them due process of law under the Sixth Amendment of the
United States Constitution and article 1, section 19 of the Texas Constitution by denying them the right to put a viable
defense before the jury. Appellants argue they were denied the opportunity to present the defense theory that there were
other people with motives to kill the alleged intended victim, Roel Cortez, (7) when the trial court disallowed the testimony
of Detective Munoz who would have testified as to other similar attempts on Cortez's life and his involvement in gang
activity. (8) Questions of relevance should be left largely to the trial court, and will not be reversed absent an abuse of
discretion. Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993). "[A]s long as the trial court's ruling was at
least within the zone of reasonable disagreement, the appellate court will not intercede." Montgomery v. State, 810 S.W.2d
372, 391 (Tex. Crim. App. 1990);Green, 934 S.W.2d at 102.

 Appellants called Detective Munoz as a trial witness. When questions concerning Cortez's involvement in gang related
activities were asked, the State objected to such testimony as irrelevant to the issues at trial. Outside the presence of the
jury, Detective Munoz testified he was one of two gang experts at the Kingsville Police Department. He testified about
Cortez's gang related activities in Kingsville. Detective Munoz also testified that Cortez had been involved in one and
maybe two other shootings. Appellants' trial counsel developed testimony specifically about a shooting involving Brandon
DeCamp and Alfredo Uribe, and Cortez's presence at the shooting. Detective Munoz testified, however, that there was no
connection between Uribe's shooting DeCamp and the present case. The court also heard opinion testimony from Detective
Munoz concerning Cortez's reputation for truthfulness and veracity. The trial court determined that Detective Munoz's
testimony regarding Cortez's gang related activities had no relevance to the issues before the jury involving the death of
DelaRosa. However, the trial court did allow appellants to ask Detective Munoz questions concerning Cortez's reputation
for truthfulness and veracity. We conclude the ruling was within the zone of reasonable disagreement and the court did not
abuse its discretion in refusing to allow this testimony. Appellants' fourth point of error is overruled.

 In their fifth point of error, appellants contend that the trial court incorrectly applied the harmless error standard when it
denied their joint motion for new trials. Appellants urge the trial court should have determined whether appellants received
a fair trial. In support of their argument, appellants reassert contentions made in their first three points of error. Without
addressing the correctness of the trial court's reasoning supporting his denial of appellants' joint motion for new trials,
having concluded there was no error in points one, two and three, we conclude that the trial court did not err in denying
appellants' motion for new trial. Appellants' fifth point is overruled.

 By point of error six, Christopher complains that the trial court committed a material error in submitting an untimely
supplemental charge which asked the jury to make an affirmative finding that he was a party to the use or exhibition of a
deadly weapon. After closing arguments on punishment and after jury deliberations had begun, the trial court informed
counsel that there was a problem with the jury charge on punishment. The court explained,

 with regard to Christopher Lee Yow, I did not completely charge the jury according to the law. In the manner that I intend
to submit a supplemental Charge to the jury concerns the use of deadly weapon as a party, because the evidence clearly
shows and the verdict shows that the Defendant, Christopher Lee Yow, himself, did not use a weapon, deadly weapon. 
And under the law, in order for the 3-G provisions to apply, the jury must make an affirmative finding as to him as a party.



 I thought about stopping the argument at that point, but I decided not to. I believe the better thing to do is simply to prepare
a supplemental Charge and if Counsel request, I will give additional time to argue that particular point to the jury, and this
would apply only [to] Christopher Lee Yow and the State, of course; not to Phillip Lamar Yow.



 Any objection to that proceeding?



No objections were made to the supplemental charge, other than one resulting in the correction of Christopher's middle
name.

 The trial court was told that the jury had reached a verdict on punishment; however, before the court received the verdict,
the jury returned to the courtroom for the purpose of receiving the supplemental charge on whether Christopher was a party
to the use or exhibition of a deadly weapon. After the supplemental charge was read to the jury, the trial court explained:

 I will now return you to the jury room. But before you leave, once again, consider the instructions contained in the
supplemental Charge and answer that issue. If it in any way affects any verdict that you have reached with regard to
Christopher Lee Yow, then you are free to make whatever changes you feel are appropriate since the Court has not yet
received the verdict in either case.



The trial court allowed additional time for argument, and after arguments, the jury returned to the jury room for
deliberations. The jury returned with a verdict of eighty years imprisonment and a $10,000.00 fine for each appellant. It
also returned with a verdict on the supplemental charge, answering in the affirmative and making a deadly weapon finding
on Christopher.

 Article 36.16 of the Texas Rules of Criminal Procedure provides that "[a]fter the judge shall have received the objections
to his main charge, together with any special charges offered, he may make such changes in his main charge as he may
deem proper. . . ." Tex. Code of Criminal Proc. Ann. art. 36.16 (Vernon 1981). In this case, the trial court corrected an
error it thought existed by submitting a supplemental charge after jury deliberations had begun. See Smith v. State, 898
S.W.2d 838, 855 (Tex. Crim. App. 1995). Because article 36.16 allows the trial court to withdraw and correct its charge
before verdict, we find no error. See id. Christopher's sixth point of error is overruled.

 By point of error seven, Christopher complains that the supplemental charge was fundamentally defective because it was
not signed by the trial judge. Article 36.17 of the Texas Code of Criminal Procedure provides "the general charge given by
the court and all special charges given or refused shall be certified by the judge and filed among the papers in the cause." 
Tex. Code Crim. Proc. Ann. art. 36.17 (Vernon 1981). Christopher argues that the trial judge's signature was mandatory;
thus, the error was reversible. However, when the requirements of article 36.17 are not met, we may reverse the judgment
only if "the error appearing from the record was calculated to injure the rights of the defendant" or if "it appears from the
record that the defendant has not had a fair and impartial trial." Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 1981). The
record reveals that the supplemental charge was not signed by the trial judge. However, a filestamped copy of the
supplemental charge is contained in the clerk's record and, except for the missing trial judge's signature, appears regular on
its face. Furthermore, it reflects a change in Christopher's middle name at page two as requested by his counsel. There is
nothing in the record or argument (9) that establishes this was not the supplemental charge read to the jury. While counsel
complains that the charge is fundamentally defective, they provide no argument or authority for how the lack of the court's
signature on the supplemental charge was calculated to injure Christopher's rights or to deprive him of a fair and impartial
trial. We cannot conclude error occurred in this instance. Christopher's seventh point of error is overruled.

 By his eighth point, Christopher contends he was denied effective assistance of counsel. The standard of review for
ineffective assistance of counsel was set out inStrickland v. Washington, 466 U.S. 668, 687 (1984). See id.; Hernandez v.
State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). First, trial counsel's performance must fall "below an objective standard
of reasonableness." Strickland, 466 U.S. at 687-88. This deficiency must be to the extent that counsel failed to function as
the "counsel" guaranteed by the Sixth Amendment of the United States Constitution. Yates v. State, 917 S.W.2d 915, 920
(Tex. App.-Corpus Christ 1996, pet. ref'd). Secondly, the appellant must prove that "the deficient performance prejudiced
the defense" by "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been
different." Strickland, 466 U.S. at 686, 694. The reviewing court must presume that counsel is better positioned than the
appellate court to judge the pragmatism of the particular case, and that she made all significant decisions in the exercise of
reasonable professional judgment. Delrio v. State, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992); Moffatt v. State, 930
S.W.2d 823, 826 (Tex. App.-Corpus Christi 1996, no pet.). The record must contain evidence of counsel's reasoning, or
lack thereof, to rebut that presumption. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

 Christopher contends that he was denied effective assistance because his trial counsel failed to object to the allegedly
untimely supplemental jury charge asking the jury to determine if he was a party to the murder of DelaRosa and whether he
knew that a deadly weapon would be used or exhibited during the commission of the offense. However, having found the
supplemental charge was timely, counsel could not have been ineffective on that basis as there was no error to preserve. 
Presuming counsel was better positioned than we are to judge the pragmatism of the particular case, and that she made all
significant decisions in the exercise of reasonable professional judgment, we conclude trial counsel's performance did not
fall "below an objective standard of reasonableness." Christopher's eighth point of error is overruled.

 The judgment of the trial court is affirmed.

 

NELDA V. RODRIGUEZ

Justice



Do not publish .

Tex. R. App. P. 47.3.



Opinion delivered and filed

this 6th day of December, 2001.

 

1. Christopher Yow and Phillip Yow will be referred to collectively as appellants. Where the facts dictate, each individual
appellant will be referred to by his first name.

2. Christopher was convicted as a party.

3. Sergeant Garza stated in his supplemental report that he discovered one shell casing from an automobile that was used by
appellants during the shooting; took photographs of the shell casing; and seized the shell casing as evidence. He also noted
that Detective Mario Munoz used a gun powder residue collection kit on the shell casing and that the casing was logged
and tagged as evidence and placed in the evidence room. 



 Trial counsel did not receive a copy of the results of the gun powder residue collection kit from the recovered shell casing. 
However, those results were not admitted into evidence and no testimony regarding the testing was offered at trial.

4. Detective Blackstock also testified at the motion for new trial hearing that "[she] concentrated on the other things that
[she] had in front of [her]. [The shell casing] was one of the things [she] forgot."

5. We have reviewed the original photographs admitted as State's Exhibits 8 and 9, and we, too, conclude that the shell
casing is clearly revealed on the floor of the vehicle.

6. Christopher's counsel informed the court that the evidence was changing their entire trial strategy, and they were "going
to have to get together with [their] clients, sit down, discuss this - - the implications of the evidence." When the trial court
asked how much time appellants would need, counsel for Christopher responded that "a Motion for Continuance would just
drag on this trial. My clients have been in custody since this happened. I think us being forced to have to stop the trial in
the middle of the trial is going to violate their right to a speedy trial." The court responded that this would not be the first
trial that was suspended to allow the defense to conduct additional investigation before the trial was resumed with the same
jury. Counsel indicated she was ready anyway and only needed the rest of the day.

7. Appellants contend that Cortez, not DelaRosa, was the intended victim.

8. At the hearing on appellants' joint motion for new trials, Phillip's trial counsel reiterated that evidence that there were
many other people who might have attempted a drive-by shooting of Cortez was critical and dovetailed with their defensive
theory that there was no physical evidence linking appellants to the crime.

9. Appellate counsel presumes it is a true and correct supplemental charge given to the jury although they note that they are
unable to verify this fact because the court reporter, in transcribing the trial proceedings, merely referenced that "(COURT
READ SUPPLEMENTAL CHARGE ON PUNISHMENT)."