In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00011-CV


______________________________




GREGORY LEWIS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 102nd Judicial District Court


 Bowie County, Texas


Trial Court No. 04C0902-102




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 Appellant, Gregory Lewis, filed a notice of appeal December 13, 2007, from the trial court's
December 5, 2007, denial of his motion to rescind an order of forfeiture, requesting the trial court
rescind its April 5, 2007, order. 

 The trial court's denial of Lewis' motion to rescind does not constitute a final, appealable
order. Unless otherwise statutorily authorized, an appeal may be made only from a final judgment.
See Tex. Civ. Prac. & Rem. Code Ann. § 51.012 (Vernon 1997), § 51.014 (Vernon Supp. 2007). 

 If we treat Lewis' appeal as a normal appeal of the April 5, 2007, order, it is too late. See
Tex. R. App. P. 26.1. (1) Even if the Court treats this matter as an attempted restricted appeal of the
April 5, 2007, judgment, the notice of appeal is untimely. A notice of restricted appeal must be filed
within six months after the judgment is signed. Tex. R. App. P. 26.1(c). Lewis filed his notice of
appeal on December 13, 2007, well outside the allowed six-month period. Further, we note that the
procedure available to extend certain deadlines when a party proves late notice of judgment is not
available to extend the time to perfect a restricted appeal. Tex. R. Civ. P. 306a; Tex. R. App. P.
4.2(a)(2).

 Accordingly, we dismiss this appeal for want of jurisdiction.




 Josh R. Morriss, III

 Chief Justice


Date Submitted: January 29, 2008

Date Decided: January 30, 2008


1. The deadline to file a notice of appeal is thirty days after the judgment is signed, unless an
exception applies. No exception appears here.


vascript: self.close()">Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00050-CR
______________________________


JERMAINE EASTER, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 04F0537-102


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION
 
            Jermaine Easter appeals his conviction for capital murder.


 Finding the State's witness Danny
Goodson was not an accomplice, either as a matter of law or fact, and that Section 7.02(b) of the
Texas Penal Code does not apply, we affirm Easter's conviction. 
Factual Background
            Warren Earl Murphy was reported missing by his family on or about July 10, 2001. Murphy's
friend, Rob Stevens, was with him the night of July 6, 2001. Murphy had a conversation with Easter,
codefendant Jason Jackson, and Prince Long. Following that conversation, Stevens saw Murphy
engage in another conversation with the same three men, about forty minutes later. Stevens was on
a street one block away from Murphy and the three individuals, and Stevens could not see Murphy. 
He did hear Murphy arguing with someone and heard the sound of Murphy being struck by someone. 
Stevens said he would recognize Jackson's car if he saw it, but the record is not clear whether
Stevens actually saw the car. Stevens testified he tried to walk to where he heard Murphy's voice,
but Easter prevented him, and told Stevens to turn around and leave. Stevens further said he heard
sounds from a vehicle of "bumping and doors closing" and of a person trying to escape from the
vehicle. Stevens said he heard this while standing behind a car, when Murphy was a distance away
in a field. 
            Long, who was fifteen years old at the time these events occurred, testified for the State. 
According to Long, Easter, Jackson (cousin to Long), and Long beat Murphy and put him in the
trunk of Jackson's car. The three took their captive to the house of Long's and Jackson's
grandmother, who was deceased. Once they arrived at the house, they beat Murphy again and began
firing shots around his feet.


 When one shot accidentally hit Murphy's foot, Easter told Jackson,
"You've got to let me do him. I can't go back to prison."


 According to Long, Easter fired several
shots into Murphy's torso. Easter then told Long to "get another gun." Long located and gave a rifle
to Easter, which Easter then used to continue to shoot Murphy. 
            Danny Goodson testified he was an acquaintance of Jackson, having let Jackson previously
store marihuana on Goodson's property. Goodson said that, about 1:00 a.m. July 6, 2001, Jackson
called Goodson and said he needed a favor. Goodson testified he did not know what the favor was
until the three men arrived at Goodson's property. Jackson, Long, and Easter arrived at Goodson's
property and used Goodson's wheelbarrow to remove Murphy's body from Jackson's trunk. They
took the body to an existing hole Goodson used to dispose of animal waste and remains.


 Murphy's
body was thrown in the hole, doused with gasoline, and set on fire. While this was happening,
Goodson said Easter bragged about having shot Murphy. 
            Some days later, Jackson contacted Goodson and returned to the site to remove the remains
from the waste hole. Goodson and his friend John Blumen


 (who had been present the night of the
burning) helped Jackson dig up Murphy's remains and scatter the remains around Goodson's
property. DeKalb Police Chief Dewayne Cannon testified that approximately twenty-seven bones
were found around the property, and they appeared to have been gnawed and partially consumed by
animals in the wooded area. Murphy's head was severed from the body, placed in a bucket, covered
with cement, and thrown into the Red River from the bridge at the Texas–Oklahoma state line. No
evidence indicates Goodson was involved in the disposal of the head. Using a saliva sample from
Murphy's brother, a medical expert from the Federal Bureau of Investigation was able to conduct
mitochondrial DNA testing identifying the DNA sequence from Murphy's brother as the same as that
from Murphy's remains. 
Goodson Is Not an Accomplice as a Matter of Law
            Easter's first point of error claims the trial court erred in not instructing the jury that Goodson
was an accomplice as a matter of law. Alternatively, Easter claims the trial court erred in failing to
instruct the jury to determine whether Goodson was an accomplice in fact. At trial, Easter requested
the trial court instruct the jury that Goodson was an accomplice as a matter of law. He did not
specifically request a jury instruction on the matter of accomplice as a matter of fact.


 
            An accomplice is one who participates with a defendant before, during, or after the
commission of a crime and who acts with the required culpable mental state. Paredes v. State, 129
S.W.3d 530, 536 (Tex. Crim. App. 2004). A conviction cannot be based on the testimony of an
accomplice witness unless corroborated by evidence tending to connect the defendant with the
offense committed. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). The accomplice's
participation must involve some affirmative act that promoted the commission of the offense with
which the accused is charged. An accomplice as a matter of law is one who is susceptible to
prosecution for the offense with which the accused is charged or a lesser-included offense. Paredes,
129 S.W.3d at 536. The trial court is under no duty to instruct the jury unless there exists no doubt
or the evidence clearly shows that a witness is an accomplice witness as a matter of law. Id. 
Goodson did not deny his culpability for the charge of tampering with evidence, and Chief Cannon
said he believed Goodson had committed that crime. Goodson was charged with tampering with
evidence, but not murder or capital murder. Tampering with evidence is not a lesser-included
offense of capital murder.


 Further, we do not believe Goodson was susceptible to prosecution for
capital murder or any lesser-included offense of capital murder. Paredes is factually similar to this
case. In Paredes, a witness, Ayala, received a telephone call to do a favor for the defendant. When
Ayala arrived to assist the defendant, he discovered some rugs rolled up in the back of a pickup truck
and realized the rugs contained bodies. Ayala then helped load the bodies and assisted in disposing
of them. The Texas Court of Criminal Appeals held there was no evidence Ayala was involved with
the planning of the murders or ever saw the victims when they were alive. Assisting after the fact
in the disposal of the bodies does not subject the witness to prosecution for capital murder. 
Consequently, Ayala was not an accomplice witness as a matter of law. Id. at 537. Similarly, here,
Goodson did not participate in the planning of the murder or commit any affirmative act that
promoted the commission of the offense of capital murder. Goodson was not an accomplice witness
as a matter of law, and the trial court was not required to instruct the jury that Goodson was such an
accomplice witness. See Bulington v. State, No. 06-04-00135-CR, 2005 WL 2847406 (Tex.
App.—Texarkana Nov. 1, 2005, no pet.) (where defendant's girlfriend helped him clean murder
scene and dispose of victim's bodies because she feared defendant, coupled with lack of evidence
she had any anticipatory knowledge that defendant intended to kill or commit a crime of violence
against two victims, held girlfriend was not accomplice in either law or fact). 
Goodson Is Not an Accomplice as a Matter of Fact
            Easter argues that Goodson was an accomplice as a matter of fact. If there is conflicting
evidence, making it unclear whether the witness is an accomplice, the trial court must submit a jury
instruction on the issue of accomplice as a matter of fact. Blake v. State, 971 S.W.2d 451, 454–55
(Tex. Crim. App. 1998); Paredes, 129 S.W.3d at 536; Long v. State, 10 S.W.3d 389, 393 (Tex.
App.—Texarkana 2000, pet. ref'd). Long, one of Easter's codefendants, stated on cross-examination
that shortly after the murder of Murphy, Long had given a statement to authorities wherein Long said
he and Jackson left Murphy, alive, with Easter. Long and Jackson went to Jackson's home, where
Long heard Jackson telephone someone and tell that party Jackson had "a body . . . to dispose of."


 
Chief Cannon said that, through his investigation, he concluded Murphy was left, alive, in the care
of Easter, while Jackson and Long went to their grandmother's house. 
            Easter argues that this evidence, suggesting Murphy was still alive when Jackson telephoned
Goodson, amounts to conflicting evidence as to whether Goodson was an accomplice. None of this
is evidence that Goodson had any knowledge Murphy was alive or that Goodson committed any act
that planned or promoted the commission of the murder.


 Goodson testified he received a call from
Jackson, who said he needed a favor. As we have previously discussed, the Texas courts have held
on many occasions that assisting with the disposition of a body does not make one an accomplice
to the charge of murder. See Smith v. State, 721 S.W.2d 844, 851 (Tex. Crim. App. 1986); Husting
v. State, 790 S.W.2d 121, 124 (Tex. App.—San Antonio 1990, no pet.); Keegan v. State, 681 S.W.2d
806, 812 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd). There was no conflicting evidence of
Goodson's participation in the murder. 
            Easter cites us to Harris v. State


 as authority that the trial court was obligated to allow the
jury to determine whether Goodson was an accomplice as a matter of fact. We find Harris
distinguishable. There, the purported accomplice witness was present during the murder, had blood
on her clothing, offered conflicting statements about her role in the murder, and expressed a
consciousness of guilt.


 In contrast, in this case, there is no evidence that Goodson was present at
the time of the murder or that he was a participant in the murder. There is no evidence Goodson
affirmatively acted to assist in the planning or commission of the murder. Even if Goodson was told
there was a body to dispose of, such information would have conveyed to him that the murder was
completed. 
            In the absence of conflicting evidence, there was no error in the trial court failing to submit
to the jury the question of whether Goodson was an accomplice as a matter of fact.
Sufficiency of the Evidence
            Easter's second point of error is that the evidence is insufficient if the accomplice witness
testimony is excluded. Since we have found that Goodman was not an accomplice witness as a
matter of fact or law, the point is overruled. 
Goodson Was Not Part of a Conspiracy
            Finally, Easter complains Goodson "was an accomplice witness under the definition of
criminal responsibility as set forth in V.T.C.A., Penal Code, §7.02(b)." Section 7.02(b) of the Texas
Penal Code states:
(b) If, in the attempt to carry out a conspiracy to commit one felony, another
felony is committed by one of the conspirators, all conspirators are guilty of the
felony actually committed, though having no intent to commit it, if the offense was
committed in furtherance of the unlawful purpose and was one that should have been
anticipated as a result of the carrying out of the conspiracy.
Tex. Pen. Code Ann. § 7.02(b) (Vernon 2003). Assuming a conspiracy to kill Murphy existed,
nothing in the evidence summarized above indicates Goodson conspired with Easter, Jackson, and
Long to harm Murphy. Cf. Paredes, 129 S.W.3d at 539 (trial court instructed jury on
Section 7.02(b)'s language; Paredes argued on appeal the trial court should have also instructed on
accomplice witness testimony; no evidence purported accomplice witnesses conspired to kill victim). 
Here, there is no evidence that Goodson knew of any conspiracy to kill Murphy or that Goodson was
involved in the murder of Murphy. This point is overruled. 
            We affirm the judgment of the trial court.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          November 17, 2005
Date Decided:             January 6, 2006

Do Not Publish