Opinion issued January 29, 2004












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00817-CR
NO. 01-02-00818-CR
NO. 01-02-00819-CR




KEITH GRIMES, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 889126
Trial Court Cause No. 873295
Trial Court Cause No. 884017




O P I N I O N

          In three separate indictments, appellant Keith Grimes was charged with the
felony offenses of indecency with a child in cause number 873295 for touching the
genitals of the child on or about February 6, 2001, aggravated sexual assault of a
child in cause number 884017 for causing his sexual organ to penetrate the child’s
sexual organ on or about February 6, 2001, and aggravated sexual assault of a child
in cause number 889126 for causing the child’s sexual organ to contact his sexual
organ on or about January 15, 2001. Appellant pleaded not guilty to a single jury
who convicted him of all offenses alleged and sentenced him to two years’
confinement for indecency with a child, fifteen years’ confinement for the aggravated
sexual assault of a child by penetration of the child’s sexual organ, and five years’
confinement for the aggravated sexual assault of a child by contacting the child’s
sexual organ with his sexual organ. The trial court ordered that the sentences run
cumulatively. We affirm.
          In fifteen issues, appellant complains (A) that the evidence is legally and
factually insufficient (issues 5 and 12), (B) that affidavits and/or testimony offered
by various witnesses concerning the DNA evidence and the credentials of the State’s
chief medical witness were perjurious (issues 1-4, 6, 13, and 15), (C) that the trial
court abused its discretion in determining that appellant had forfeited his pretrial bond
and by allowing evidence of the forfeiture to be admitted at trial (issue 7), (D) that the
trial court abused its discretion in admitting evidence of appellant’s October 1, 2001
suicide attempt (issue 8), (E) that the State failed to produce photographs and
videotapes (issue 9), (F) that a statement appellant made to a Houston Police
Department (HPD) Officer was admitted in violation of his Fifth Amendment rights
(issue 10), (G) that appellant was denied his right to a fair and impartial judge (issue
11), and (H) that the court erred in admitting and excluding certain evidence (issue
14).



Background
          Appellant and his then 13-year-old biological daughter (the complainant) began
an incestuous relationship in August of 2000. The complainant’s mother, who took
medication for Parkinson’s Disease that often made her drowsy, regularly fell asleep
on a couch in the family living room.
          Appellant and the complainant began inappropriately touching one another,
approximately two times per week, while lying on the couch in the family living
room, usually while the complainant’s mother was asleep on the other couch. The
sexual relationship quickly escalated. The complainant regularly entered appellant’s
bedroom to join her father in bed in the morning after her mother left for work.
          At trial, she testified regarding several sexual encounters with her father which
occurred on the first, second, and sixth of February, 2001. Following the February
6, 2001 encounter, the complainant informed her school counselor that she might be
pregnant, that her father was responsible for the suspected pregnancy, and that the
incident giving rise to her fear had occurred that morning after her mother left for
work. The counselor took the complainant to the authorities, who began an
investigation of the complainant’s allegations.
Sufficiency of the Evidence
          In his fifth and twelfth issues, appellant contends that the evidence is legally
and factually insufficient to support his convictions in each of the three offenses. 
When conducting a legal-sufficiency review, we view the evidence in the light most
favorable to the prosecution to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152, 155
(Tex. App.—Houston [1st Dist.] 1997, no pet.). Although a legal-sufficiency analysis
entails a consideration of all evidence presented at trial, we may neither re-weigh the
evidence nor substitute our judgment for the jury’s. King, 29 S.W.3d at 562. The
jury, as the trier of fact, is the sole judge of the credibility of the witnesses. Obigbo
v. State, 6 S.W.3d 299, 304 (Tex. App.—Dallas 1999, pet. ref’d).
          In a factual-sufficiency review, we take a neutral view of the evidence, both for
and against the finding, to determine (1) if the proof of guilt is so obviously weak as
to undermine confidence in the jury’s determination, or (2) if the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. King, 29
S.W.3d at 563. In our review, we must consider the most important evidence that the
appellant claims undermines the jury’s verdict. Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003). It is within the exclusive purview of the jury to determine
the credibility of witnesses and the weight to be given to their testimony. Margraves
v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). The jury’s determination may
be reversed only upon a finding that a manifest injustice has occurred. King, 29
S.W.3d at 563.
The Charged Offenses
          In cause number 873295, appellant was charged with committing the offense
of indecency with a child by touching the genitals of the complainant, a person
younger than seventeen years of age, on or about February 6, 2001, with intent to
arouse his sexual desire. In cause number 884017, appellant was charged with
committing the offense of aggravated sexual assault of a child by placing his sexual
organ inside the sexual organ of the complainant, a person younger than fourteen
years of age, on or about February 6, 2001. In cause number 889126, appellant was
charged with committing the offense of aggravated sexual assault of a child by
causing his sexual organ to contact the sexual organ of the complainant, a person
younger than fourteen years of age, on or about January 15, 2001.
          The complainant testified that her sexual relationship with appellant began in
August of 2000, shortly after she reached thirteen years of age. On the morning of
February 6, 2001, the complainant entered her parent’s bedroom, and climbed into
bed with appellant, who was naked. After climbing into bed with her father, the two
engaged in “vaginal sex.” The two engaged in sexual intercourse “[p]robably three
times in total” during the course of their relationship. The prosecutor asked whether
the complainant was referring to vaginal sex or whether she was referring to appellant
rubbing his sexual organ on the outside of her sexual organ, and the complainant
responded: “I am talking about penetration.” On cross-examination, defense counsel
asked the complainant: “[d]id your father ever place his sexual organ in your female
organ?” The complainant responded affirmatively, and testified it occurred on
February 6, 2001. On redirect, the complainant testified that although she was
wearing shorts and panties during the February 6, 2001 sexual intercourse, she
recalled that her garments were pushed aside during the incident.
          The complainant also testified that appellant contacted her sexual organ with
his sexual organ on the first and second days of February, 2002, but had attempted
to make her touch his sexual organ prior to that. When defense counsel asked
whether the contact was inadvertent, the complainant responded that the contact was
“deliberate.”
          Dr. Margaret McNeese, Medical Director for the Children’s Assessment Center
in Houston (CAC), testified that the complainant came to the CAC on February 6,
2001. She interviewed and physically examined the complainant. During the
interview, McNeese asked the complainant whether appellant placed his sexual organ
in her sexual organ, she responded “maybe.” McNeese testified that any inaccurate
or incomplete rendition of the complainant’s account of what transpired is explained
by the fact that an adolescent child typically minimizes or under-reports what they
endure because of the shame they have, and their fear of testifying in court. When
asked whether her examination revealed “clear definitive evidence of penetrating
trauma” McNeese responded affirmatively, and testified that the most likely cause of
the injuries she observed during the physical examination was from penile
penetration. Dr. Girardet, Dr. Parks, and Dr. Lahoti reviewed Dr. McNeese’s
findings, and all agreed that the complainant suffered blunt penetrating trauma.


 Both
Dr. Parks and Dr. Lahoti testified at trial, and their testimony substantiated Dr.
McNeese’s testimony and conclusions.
          While at the CAC on February 6, 2001, the complainant’s panties were
preserved for sampling. Audrey Timms, a forensic biologist employed by HPD’s
crime lab, testified that he tested samples from the complainant’s panties for acid
phosphatase and for the protein P-30. Both tests returned positive results. Timms
testified that he was not aware of any substance that would cause a false positive for
both tests, and therefore concluded that semen was present on the complainant’s
panties. Appellant’s expert substantiated the conclusions reached by Bolding and
Timms. Appellant’s expert testified that, like Bolding and Timms, her laboratory
would also conclude that seminal fluid was present in a sample if, upon analysis, the
results of both the AP Test and P-30 Test were positive, even if no evidence of sperm
could be located upon microscopic examination.
          After moving to Kansas, the complainant became the patient of Faye Heller,
an advanced registered nurse practicioner who specialized in the area of mental
health. Heller testified that the symptoms exhibited by the complainant were
consistent with a victim of child incest and that she believed that the complainant was
the victim of abuse by her father.
          Mary Proff, a counselor at the complainant’s school, was the State’s outcry
witness.


 The complainant informed her on February 6, 2001, that she thought she
was pregnant, that her father was responsible for the suspected pregnancy, and that
the incident giving rise to her fear occurred that morning after her mother left for
work. When asked by Proff whether there was penetration, the complainant
responded: “Yes, sort of.” Proff testified that she attributed any uncertainty in the
complainant’s response to her hesitancy to discuss the incident, as opposed to
confusion whether the incident actually occurred.
          Appellant attacks the inconsistencies in the complainant’s testimony, the
medical evidence, and erroneous use of the word “sperm” in Officer Ballard’s
probable cause affidavit. Appellant’s argument is reproduced below as follows:


 
The complainant denies that anything happened before February
1. She denies that she ever had her clothes off. She denies that there
was ever penetration by Keith’s penis. She denies that anything
happened on or about January 15, 2001. She states that the only time
Keith had his clothes off was February 1, 2, and 6. Nothing has ever
gone inside her reproductive organ. She testifies that she stuck her
finger in her – many times.
 
Dr. McNeese lies about her credentials. Dr. McNeese says there
are transections at 5, 6, 7, 8, and 9:00 o’clock. Drs. Park and Lahoti
only agree with the one at 9:00 o’clock. Dr. Guertin was denied access
to the videotape or the opportunity to show the videotape to the jury to
demonstrate what was actually there.
 
Dr. McNeese says that this must have been a penis, then retracts,
saying that she never said that it was a penis. She says it couldn’t be a
finger. Dr. Park says that it could be a finger, it could even be a bottle. 
Dr. Guertin says that we don’t even know if there is a transection.
 
Dr. McNeese testifies that you “never never turn a female upside
down” to examine the hymen. This is contradicted by the article she co-authored and by Drs. Parks, Lahoti, and Guertin. 
 
Dr. McNeese relies upon the presence of semen as conclusive
evidence of abuse. But there was no semen — because there was no
sperm. And whether what was found was actually seminal fluid is
unknown because of the now-known problems with the HPD Crime Lab
and because [the complainant] was not tested to rule her out as the
source of P-30.
 
For an aggravated sexual assault that allegedly happened less than
twelve hours before the examination, all doctors agree that there is no
evidence of any bruising or any recent injury.
 
Officer Ballard swears and testifies that “sperm was found and
recovered” but it is uncontroverted that no sperm was ever found or
recovered. Not even one sperm cell.
            Appellant contends that the inconsistencies in the complainant’s testimony
concerning whether appellant penetrated her means that she is not credible. When
describing how her sexual relationship with appellant evolved, she testified as
follows: “Basically I would lie next to him and we’d start touching each other and it
– as it moved it became more of a sexual nature as it increased I guess until there was
vaginal sex.” When the prosecutor asked for clarification regarding the meaning the
complainant assigned to the term “vaginal sex” she responded: “I’m guessing
penetration.” During cross-examination, defense counsel asked the complainant:
“Was there ever penetration?” The complainant responded: “I am not sure to this
day.” Another example of the complainant’s inconsistent testimony occurred during
cross-examination, when defense counsel asked the complainant the following: “To
this day are you sure whether or not there is penetration or not?” The complainant
responded as follows: “I am not positive but I do feel that there was. Yes.” We
conclude that any inconsistencies in her testimony were properly left for the jury to
make the necessary credibility determinations.
          Appellant further complains of Dr. McNeese’s credentials and expert opinion
because his expert disagreed with her findings. Dr. Guertin testified that he reviewed
the photographs taken during the physical examination of the complainant, and
disagreed with McNeese’s conclusion that the photographs depicted definitive proof
of penetrating trauma, and opined that, based on his review of the evidence, one could
not conclude that there is actual evidence of sexual activity.
          We conclude that the credibility of the experts and their opinions based on their
physical findings was properly left for the jury’s determination, and that a rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt; therefore, we conclude that the evidence is legally sufficient to
support appellant’s three convictions. See King, 29 S.W.3d at 562. Furthermore,
after a neutral view of the evidence both for and against the jury’s finding, we have
determined that the proof of guilt is not so obviously weak as to undermine our
confidence in the jury's determination, and that the proof of guilt is not greatly
outweighed by contrary proof. See id. at 563. Although the jury was presented with
some inconsistent evidence, it was the jury’s exclusive province to resolve those
inconsistencies by making credibility determinations of the witnesses, and it is free
to believe or disbelieve any portion of a witness’ testimony. Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986). We therefore conclude that the evidence
is factually sufficient to support the three convictions.



          We overrule appellant’s fifth and twelfth issues.
Perjury Concerning the DNA Evidence
          Appellant complains of alleged perjury concerning DNA evidence in issues
one, two, three, and four. In his first issue, appellant contends that (1) the probable
cause affidavit executed by Officer Sharon Ballard contained the “perjurious”
statement that “sperm was found and recovered” and (2) Officer Ballard offered
“perjurious” testimony at trial consistent with her statement in the affidavit. In his
second issue, appellant contends that Audrey Timms and Dr. Jim Bolding, employees
of the HPD Crime Lab, committed perjury when they testified that semen was found
on the complainant’s panties. Moreover, appellant alleges his due process rights were
violated by the State’s prosecutor, who used the “perjurious” testimony without
correcting it. In his third issue, appellant contends that Bolding committed perjury
when he purportedly testified that the complainant did not suffer from any conditions
that would cause the protein P-30 to be present in her body. In his fourth issue,
appellant contends that James Bolding committed perjury when he testified in the
State’s case-in-chief that the protein P-30 is not found in women, but, on rebuttal,
testified that in rare instances, the protein may be present in a woman’s body. 
Appellant contends that this alleged perjury and the presentation of this alleged
perjury by the State’s attorneys deprived him of his constitutional rights of due
process and due course of law, and constituted prosecutorial misconduct.
          One commits perjury if, with intent to deceive and knowledge of the
statement’s meaning, “he makes a false statement under oath or swears to the truth of
a false statement previously made and the statement is required or authorized by law
to be made under oath.” Tex. Pen. Code Ann. § 37.02(a) (Vernon 2003).
Officer Ballard
          Appellant’s complaints concern the following statement contained in the
probable cause affidavit: “A sexual assault kit was done on this date. Sperm was
found and recovered.”


 At trial, Ballard testified that the statement in her affidavit
was written by the district attorney, and that she swore to it. She also testified that
she telephoned appellant and informed him that she had filed charges against him
because semen had been found in the rape kit. The record demonstrates that Officer
Ballard used the terms semen and sperm interchangeably, as a lay person might do,
rather than as a medical expert making a clinical distinction. From this record, we
cannot conclude that Officer Ballard had any intent to deceive in connection with the
misstatement contained in her affidavit or her testimony. See Gone v. State, 54
S.W.3d 27, 31 (Tex. App.—Texarkana 2001, pet. ref’d) (appellant’s contention that
police officer committed perjury rejected because, in context, no evidence was
presented that supported a showing that testimony was false or that there was any
intent to deceive in connection with the misstatement).
Dr. Jim Bolding
          During the State’s case-in-chief, defense counsel cross-examined Dr. Bolding
regarding prostatic specific antigen as follows:
Are you aware of any literature, Mr. Bolding, that indicates that the
protein with [sic] the PS-30 reacts to is also found within certain bodily
fluids on females?
Dr. Bolding responded: “I’ve not read that, sir.” During the State’s rebuttal, it called
Dr. Bolding, who explained that he was aware of extremely rare occasions, in which
“an elevated level of a certain protein in female urine” could cause a false positive
result on the P-30 Test, and explained that he assumed in his previous response that
he was being questioned about “a normal female” and that he answered defense
counsel’s question assuming that the hypothetical question concerned individuals
who did not exhibit abnormal conditions. After Dr. Bolding testified that he
understood defense counsel to be questioning him regarding a “normal” female when
he gave his allegedly “perjurious” testimony, and, following clarification, he agreed
that in rare circumstances, the protein P-30 may be found in the female body. 
Bolding’s answer to the question concerning “certain bodily fluids on females” is
insufficient to establish perjury because the question could plausibly be subject to Dr.
Bolding’s interpretation. We cannot conclude that the alleged discrepancy in
Bolding’s testimony constituted perjury at trial. 
          In his third issue, appellant contends that Bolding committed perjury by
testifying that the complainant did not suffer from any condition that would cause the
protein P-30 to be present in her body, and that the admission of this evidence
deprived him of his constitutional rights of due process and due course of law.
Appellant’s brief does not, however, cite to any place in the record where Bolding
testified that the complainant did not suffer from any conditions that would cause the
protein P-30 to be present in her body. See Tex. R. App. P. 38.1(h) (brief must
contain appropriate citations to the record). Nor have we ourselves found such
testimony. Because appellant’s brief fails to conform with Rule 38.1, we overrule
appellant’s third point of error. See Tex. R. App. P. 38.1(h).
Audrey Timms
          Appellant also complains of testimony given by Audrey Timms, but does not,
in his argument, provide the Court with any citation to the record in support of his
contention that Audrey Timms gave perjured testimony at trial. Appellant does,
however, address the testimony in his statement of facts as follows:
Timms testified that the “inside and outside crotch cuttings were
both positive for semen.” She knew of nothing that could yield a false-positive on both the Anti-Phosphatase Test and the Anti P-30 test. [sic]
Time can cause false positives on the Anti P-30 test and atmospheric
conditions may interfere with the test. And any test can be run wrong.
There was no doubt in her mind that semen is present. But [sic]
she acknowledged that semen meant only seminal fluid, not sperm.
          We are to liberally construe points of error to fairly and equitably adjudicate
the merits of the case, and, thus, address appellant’s argument concerning Timms’
alleged perjury. See Tex. R. App. P. 38.9.
          We reject appellant’s contention that he established that Audrey Timms gave
perjured testimony at trial. Audrey Timms conducted both an Acid Phosphate Test
(AP Test) and ABA Card P-30 Test (P-30 Test) on the complainant’s panties, and
both tests gave a positive result for semen. She testified that she was unaware of
anything that would cause a false positive on both tests. After Timms testified that
the results of both tests returned positive results, defense counsel asked: “And what
did that indicate to you?” Timms responded, “Semen was present on the crotch of the
panties.” Timms acknowledged on cross-examination that certain atmospheric
conditions could cause a false positive result on the P-30 Test, but emphasized that
she was unaware of anything that would cause a false positive on both tests.
          In her testimony, Timms admitted that the P-30 Test can give false results.
Moreover, appellant’s expert testified that if her laboratory had found positive results
on the AP Test and the P-30 Test, she would have concluded seminal fluid was
present in the sample, even if no evidence of sperm could be located upon
microscopic examination.
          We hold that appellant has failed to demonstrate that, by testifying that semen
was found on the complainant’s panties, Audrey Timms committed perjury, because
appellant has not presented evidence that Timms made a false statement with intent
to deceive. Appellant has failed to demonstrate that the DNA evidence from Ballard,
Bolding, and Timms was perjured, and thus, appellant failed to establish prosecutorial
misconduct by presenting the evidence.
          We overrule appellant’s first, second, and fourth issues.
Dr. McNeese
          In his sixth point of error, appellant contends Dr. McNeese committed perjury
when she testified that she completed a fellowship in child abuse and neglect. 
Appellant further contends that the trial court erred when it refused to permit him to
examine Dr. McNeese in the jury’s presence regarding this alleged perjury, and when
the court refused to allow testimony from Patricia McCarroll, the administrator for
the Department of Medical Practice Administrator at the University of Texas Medical
Branch (UTMB) as impeachment concerning McNeese’s fellowship. Appellant
contends that his due process rights were violated by the State’s prosecutorial
misconduct in presenting the evidence regarding McNeese’s fellowship. 
          Appellant complains of the following testimony:
Well, after I finished my general pediatric training then [sic] as I
said did[sic] a fellowship in child abuse and neglect at the University of
Texas Medical Branch in Galveston for two years. During that time I
published in the area of child abuse and have continued to do so since
I’ve gone on to [sic] faculty in Houston.

***
 
I graduated from medical school in 1971 so I had an MD degree then
and after that a residency in pediatrics which was three years and then
when I finished pediatrics residency I did two years in child abuse
neglect [sic] and at that time I left Galveston where I did [sic] medical
school and training and came to the University of Texas at Houston
where I’ve been on the faculty ever since.

Appellant contends that McNeese misrepresented her credentials, because her two-year fellowship at the UTMB was not actually called a fellowship in child abuse. As
evidence that Dr. McNeese overstated her credentials, appellant directs us to prior
testimony from Dr. McNeese, in Cause No. 87-37952 in the 129th Judicial District
on June 7, 1988, wherein she testified that she did a fellowship in ambulatory
pediatrics at UTMB in Galveston, as opposed to a fellowship in child abuse and
neglect.
          Three days after McNeese testified, defense counsel asked to call certain
witnesses to testify before the jury regarding McNeese’s prior testimony. Outside of
the presence of the jury, defense counsel presented Patricia McCarroll, UTMB’s
Department of Medical Practice Administrator, who was questioned by the trial court
as follows:
[The Court]:If the testimony - - well would it be accurate or
inaccurate for a person to testify that an ambulatory
pediatric fellowship was a fellowship in child abuse
and neglect?
 
[Witness]:It’s my understanding that there is - - that it is called
ambulatory [sic] fellowship but their training consist
[sic] of child abuse and neglect but at that particular
time it wasn’t called child abuse [sic] neglect.
 
[The Court]:So the name was ambulatory but the sequence was
child abuse [sic] neglect.
 
[Witness]:Yes.

Defense counsel then examined the witness, who testified that Dr. McNeese did not
spend one hundred percent of the time during her fellowship focusing on child abuse
and neglect.
           Patricia McCarroll confirmed that, through her ambulatory fellowship, Dr.
McNeese trained in child abuse and neglect. McCarroll’s testimony was not in
conflict with, or impeachment of, Dr. McNeese’s testimony. Moreover, Dr.
McNeese’s descriptions of her fellowship are consistent with terms used to assist the
trier of fact in understanding her qualifications, as a layperson would better
understand the subject matter of one’s training in a fellowship in abuse and neglect,
as opposed to a fellowship in ambulatory pediatrics. The evidence presented by
appellant does not demonstrate that McNeese made a false statement with intent to
deceive. We hold that the evidence is insufficient to demonstrate that, by testifying
that she did a two-year fellowship in child abuse and neglect, Dr. McNeese
committed perjury. Furthermore, we conclude that the State’s prosecutors did not
commit prosecutorial misconduct by presenting Dr. McNeese’s testimony. We
overrule appellant’s contentions concerning the perjury allegations in issue six.
Limitation of Cross-Examination
          Within his sixth issue, appellant alleges that the trial court abused its discretion
by disallowing impeachment evidence from McCarroll and cross-examination of
McNeese concerning her fellowship. We review the decision to exclude evidence for
abuse of discretion. Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). 
The test for abuse of discretion is whether the court acted without reference to any
guiding rules and principles by acting arbitrarily or unreasonably. Galliford v. State,
101 S.W.3d 600, 604 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d).
          The trial court examined McCarroll outside of the jury’s presence to determine
whether McNeese misrepresented her credentials. When the court asked whether it
would be accurate to testify that an ambulatory pediatric fellowship was a fellowship
in child abuse and neglect, McCarroll responded that, although the title of the
fellowship was ambulatory, the training consisted of child abuse and neglect, and that
at that particular time, the fellowship was simply not titled a child abuse and neglect
fellowship. After considering this testimony, the State objected to its admission on
the basis of relevance and improper impeachment. The court agreed, stating “It is not
probative of any issue in this case. It will lead to confusion of the issues and it is just
a waste of time.” We are unable to conclude that the trial court acted without
reference to any guiding rules and principles, and hold that the trial court did not
abuse its discretion in refusing to allow appellant to examine McCarroll and McNeese
before the jury regarding McNeese’s two-year fellowship at UTMB. See Galliford,
101 S.W.3d at 604.
          We overrule appellant’s sixth issue.
Denial of Motion for New Trial
          In his thirteenth issue, appellant contends that the trial court erred when it
denied his motion for new trial. Appellant contends that he was entitled to a new trial
because of the alleged perjurious testimony he complains about in his first, second,
third, fourth, and sixth issues. Appellant’s thirteenth issue is, therefore, a restatement
of these issues. Because we have concluded that those issues are without merit, we
overrule appellant’s thirteenth issue.
Due Process
          Appellant’s fifteenth issue provides as follows:
Was false testimony presented by the State that . . . in any reasonable
likelihood affected the judgment of the jury? If so, did this violate
Keith’s Due Process rights?
We have previously addressed appellant’s perjury contentions in his first, second,
third, fourth, and sixth issues and determined them to be without merit. Appellant has
not complained of any other alleged instances of perjury, other than those mentioned
in the previous issues on appeal. 
          We overrule appellant’s fifteenth issue.
Bond Forfeiture
          In his seventh issue, appellant contends that the trial court abused its discretion
when it forfeited his pretrial bond after he failed to appear at a court setting on
October 5, 2001, and that the trial court erred in admitting evidence of his bond
forfeiture. The State contends that we are without jurisdiction to consider appellant’s
seventh issue, because the appellate record does not indicate that appellant filed a
notice of appeal from the forfeiture of his bond, and, alternatively, if we determine
we have jurisdiction to consider the forfeiture proceeding, appellant has presented
nothing for this Court to review because no record of the forfeiture proceeding is
contained in the appellate record.
          Appellant has not provided any citation to the record wherein he complains that
the trial court erred in forfeiting his pretrial bond. We have located testimony
referencing the forfeiture proceeding within the record, but have located no record
of the actual proceeding to which appellant has assigned error. Texas Rule of
Appellate Procedure 38.1(h) provides that the “brief must contain a clear and concise
argument for the contentions made, with appropriate citations to authorities and to the
record.” Tex. R. App. P. 38.1(h). This Court cannot consider an item that is not a part
of the record on appeal. Rasberry v. State, 535 S.W.2d 871, 873 (Tex. Crim. App.
1976). Because appellant has not provided any citation to the record wherein he
complains that the trial court erred in forfeiting his pretrial bond, we hold that
appellant has waived any error regarding the bond forfeiture. Id. We overrule
appellant’s contention that the trial court abused its discretion in forfeiting his pretrial
bond.
          Also within his seventh issue, appellant contends that the trial court erred by
allowing the State to introduce testimony concerning the forfeiture of his pretrial
bond. At trial, the court admitted evidence that appellant forfeited his bond for
failure to appear on October 5, 2001.


 On appeal, appellant contends that the
prejudicial effect of the admission of this evidence outweighed its probative value. 
          In order to preserve error, appellant was required to present a timely objection
that stated the grounds for the ruling that he sought with sufficient specificity to make
the trial court aware of his complaint, unless the specific ground was apparent from
the context. Tex. R. App. P. 33.1. We hold that appellant waived any error, because
appellant failed to object to this evidence when it was admitted at trial.
          We overrule appellant’s seventh issue.
Appellant’s Suicide Attempt
          In his eighth issue, appellant contends that the trial court abused its discretion
when it admitted evidence of his suicide attempt, as the probative value of the
evidence was substantially outweighed by its prejudicial effect.


  
          Any error from the admission of evidence concerning appellant’s suicide
attempt was rendered harmless by the admission of the same information through
unchallenged evidence. Appellant’s former spouse testified that appellant informed
her that, if the State’s case against appellant went to trial, he would not be present;
he would commit suicide or “become one of America’s Most Wanted.” Appellant did
not object to this testimony. 
          The improper admission of evidence does not constitute reversible error if the
same facts are shown by other evidence which is not challenged. Crocker v. State,
573 S.W.2d 190, 201 (Tex. Crim. App. 1978). Because the same evidence was
admitted without objection, the error, if any, was harmless.
          We overrule appellant’s eighth issue.
Discovery
          In his ninth issue, appellant contends that the State violated its duty to provide
exculpatory evidence pursuant to Brady v. Maryland,


 violated appellant’s due
process rights, violated appellant’s right to confront witnesses, and that the prosecutor
committed prosecutorial misconduct by producing only two out of twelve
photographs of the complainant and by failing to produce a videotape made during
an examination of the complainant until just before appellant’s medical expert
testified at trial.



          Appellant’s complaints are in reference to his motion for discovery, which
requested “[a] copy of all the medical and ‘Colposcope’ photographs or slides and
videotapes . . .” for review by his expert. The relevant portion of the trial court’s
discovery order provided as follows:
It is therefore ORDERED that the State of Texas, through her District
Attorney, release copies of the medical records and colposcopic
photographs of the complainant, which are in the possession of the State
of Texas to defense counsel L.T. Bradt.
          Appellant contends that “[t]he failure to produce the videotape and the other
photographs violates the clear meaning of the court’s order.” Assuming that the
prosecutor technically violated the trial court’s discovery order, violation of a
discovery order does not automatically require reversal. King v. State, 746 S.W.2d
515, 517 (Tex. App.—Dallas 1988, pet. ref’d). The general rule is that “evidence
willfully withheld from disclosure under a discovery order should be excluded from
the trial.” See Hollowell v. State, 571 S.W.2d 179, 180 (Tex. Crim. App. 1978). If
the trial court admits the disputed evidence, we review its ruling for abuse of
discretion. Ransom v. State, 920 S.W.2d 288, 301 (Tex. Crim. App. 1994). The
Court of Criminal Appeals has held that even if the State violates a discovery order,
if the State reveals the requested information in time for the defendant to use it on
cross-examination of the State’s witnesses, the evidence need not be excluded. 
Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). 
          Dr. Guertin, appellant’s medical expert, was permitted to view the videotape
prior to testifying, and testified that his review of the video did not affect his initial
assessment. Dr. Guertin based his trial testimony on his review of the video, and
reviewed the video before Dr. McNeese, Dr. Park, and Dr. Lahoti testified; the State
therefore revealed the requested information in time for the defendant to use it on
cross-examination of the State’s witness. Furthermore, the photographs that appellant
complains were wrongfully withheld were created from freeze-frame video images
after the State tendered the photographs in its possession pursuant to the trial court’s
discovery order. We hold that the trial court did not abuse its discretion in admitting
the disputed evidence. 
          We overrule appellant’s ninth issue.
Use of Appellant’s Incriminating Statements
          In his tenth issue, appellant contends that the trial court erred by admitting
statements made by him to Officer Ballard because Officer Ballard failed to warn him
of his Fifth Amendment right to remain silent.
          Relying on Escobedo v. Illinois, 378 U.S. 478, 84 S. Ct. 1758 (1964), appellant
argues that “the right to be warned of the right to counsel is [sic] when the
investigation is no longer a general inquiry” and Ballard should have therefore
advised appellant of his rights provided by the Fifth Amendment.
          The State is not required to give Miranda warnings to a suspect until after that
person has been taken into custody or otherwise deprived of his freedom of action in
a significant way. Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612
(1966). Appellant’s reliance on Escobedo is misplaced. In Escobedo, the United
States Supreme Court held as follows:
that where, as here, the investigation is no longer a general inquiry into
an unsolved crime but has begun to focus on a particular suspect, the
suspect has been taken into police custody, the police carry out a process
of interrogations that lends itself to eliciting incriminating statements,
the suspect has requested and been denied an opportunity to consult with
his lawyer, and the police have not effectively warned him of his
absolute constitutional right to remain silent, the accused has been
denied ‘The Assistance of Counsel’ in violation of the Sixth Amendment
to the Constitution as ‘made obligatory upon the States by the
Fourteenth Amendment,’ and that no statement elicited by the police
during the interrogation may be used against him at a criminal trial.
Escobedo v. Illinois, 378 U.S. at 490-91, 84 S. Ct. at 1765 (internal citations omitted)
(emphasis added). 
          Officer Ballard contacted appellant by telephone to advise him that charges had
been filed against him. During Officer Ballard’s telephone conversation with
appellant, appellant told her that the semen that was found in the rape kit could not
be his, because “all [that the complainant] did was rub on me.” After Officer Ballard
suggested that what was recovered may have been pre-ejaculate, appellant responded,
“[W]ell how do I just get this over with and plead guilty.” Appellant was not in
police custody, had neither requested nor been denied the opportunity to consult with
a lawyer, and, according to Ballard, volunteered this information. We hold that the
trial court did not err in allowing Officer Ballard to testify, over appellant’s Fifth
Amendment objection, regarding appellant’s incriminating statements he made over
the telephone.
          We overrule appellant’s tenth issue.
Denial of Fair and Impartial Judge
          In his eleventh issue, appellant contends that he was denied his constitutional
right to a fair and impartial judge under the Fourteenth Amendment of the United
States Constitution. Appellant contends that the following instances demonstrate that
the trial court was biased against appellant:
•        “. . . the continued refusal of the judge to allow Keith to refer to Officer
Ballard’s probable cause affidavit as perjurious or even false.” 
 
•        “allowing in evidence of the bond forfeiture and Keith’s attempted suicide –
evidence designed to prejudice the jury against Keith.”
 
•        “when sustained [sic] an objection to the word ‘allegation’ in a question to Mr.
Bolding, that ‘What [sic] we’re dealing with here is an allegation.’”
 
•        “The court then chided counsel for making ‘side bars.’”
 
•        “By preventing Keith from asking questions about the allegations against 
him. . .”
 
•        “But [the trial court’s] greatest display of bias against Keith was when she
ordered Keith’s attorney to surrender documents in his possession — that
contained his work product — including the complete HPD Crime Lab Report,
refused [sic] to maintain them for appellate purposes and then stated that she
would shred them.” (emphasis in original).



          Appellant has not directed us to any evidence in the record that supports his
contention that the trial judge was biased or prejudiced against him. Bias must come
from an extrajudicial source and result in an opinion on the merits of the case other
than what the judge learned from participation in the case. Rosas v. State, 76 S.W.3d
771, 774 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Appellant complains only
of actions taken by the trial judge while acting in her capacity as the presiding judge
at appellant’s trial. His proper remedy is to assign error on appeal on the basis of
these adverse rulings. Cumpian v. State, 812 S.W.2d 88, 91 (Tex. App.—San
Antonio 1991, no writ). 
          We overrule appellant’s eleventh point of error.
Admission and Exclusion of Evidence
          In his fourteenth issue, appellant contends that the trial court abused its
discretion when it “admitted evidence that should have been excluded and excluded
evidence that should have been admitted.”
          Specifically, appellant complains of eleven instances of alleged error:
1.       Admitting evidence of his suicide attempt.
 
2.       Admitting evidence of his bond revocation.
 
3.       Admitting Officer Ballard’s testimony regarding the incriminating statements
appellant made to her over the telephone.
 
4.       Excluding testimony from McCarroll concerning Dr. McNeese’s fellowship.
 
5.       Excluding cross-examination of Dr. McNeese concerning her fellowship.
 
6.       Sustaining the State’s objection to a question to the complainant asking that
she explain what she meant when she testified that “it felt like a penis.”
 
7.       Overruling appellant’s objection to Officer Ballard’s testimony regarding the
videotaped interview of the complainant.
 
8.       Sustaining the State’s objection to appellant’s question to Officer Ballard
concerning whether she would have pursued charges against appellant if she
had not been informed that sperm was recovered from the rape kit.
 
9.       Refusing to allow appellant to cross-examine Bolding about his awareness of
literature that says that the protein P-30 is found in women taking oral
contraceptives.
 
10.     Sustaining the State’s objection to a question posed to Bolding “As to whether
or not the P-30 test reacts only through a protein that is found only within the
male body.”
 
 11.     Refusing to allow appellant to cross-examine Bolding about an article in the
journal entitled “Journal of Clinical Chemistry.”

          We have previously determined appellant’s first five contentions to be without
merit. Furthermore, appellant has provided no argument or authority in support of his
sixth through tenth contentions. Tex. R. App. P. 38.1(h). Finally, because Bolding
was unfamiliar with the Journal of Clinical Chemistry, and defense counsel did not
otherwise establish the journal as a reliable authority, we hold that the trial court did
not abuse its discretion in refusing to permit appellant to cross-examine Bolding
about an article in the journal entitled Journal of Clinical Chemistry. Tex. R. Evid.
803(18).



          We overrule appellant’s fourteenth issue.
Judicial Notice
          Appellant provided this Court with a copy of an article that purportedly
appeared on the Houston Chronicle’s web site, which states in relevant part as
follows: 
. . . DNA section head James Bolding, with the police department 23
years, retired Wednesday after [he was] recommended for termination. 
Such a recommendation typically leads to dismissal from the Houston
Police Department.

Based upon that purported article, appellant asks that this Court take judicial notice
that “Mr. Bolding was recommended for termination after the internal investigation
into problems at the Crime Lab and that he resigned rather than face termination.”
          An appellate court may take judicial notice of facts that the trial court could
have judicially noticed, or facts necessary to determine its jurisdiction. Lemmon v.
United Waste Sys., Inc., 958 S.W.2d 493, 499 (Tex. App.—Fort Worth 1997, pet.
denied). Those facts must, however, be “notorious, well known, or easily
ascertainable” in order to be judicially noticed. Landry v. State, 60 S.W.3d 263, 266
(Tex. App.—Houston [14th Dist.] 2001, pet. ref’d). 
          The article appellant submitted in support of his motion specifically states only
that “Such a recommendation typically leads to dismissal from the Houston Police
Department.” (Emphasis added). We hold that the reason for Bolding’s resignation
from the Houston Police Department is not “notorious, well known, or easily
ascertainable,” because the purported article itself states that a recommendation is not
conclusive, but only typically leads to termination. See Landry, 60 S.W.3d at 266.
          Appellant’s motion to take judicial notice is denied.
Conclusion
          We affirm the judgment of the trial court.


                                                             Adele Hedges
                                                             Justice

Panel consists of Justices Alcala, Hanks, and Hedges.




Publish. Tex. R. App. P. 47.4.